**AMERICAN POSTAL WORKERS
UNION, AFL–CIO, Appellant,**

v.

**UNITED STATES POSTAL SERVICE.**

No. 85–5167.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 28, 1986.

Decided April 18, 1986.

**2**

Arthur M. Luby, for appellant.

Scott T. Kragie, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., were on brief, for appellee.

Before: EDWARDS and GINSBURG, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The instant appeal challenges a decision of the District Court refusing to enforce a labor arbitration award. Because we find that the trial judge simply substituted his judgment for that of the arbitrator, thereby effectively disregarding the legal mandates of the Supreme Court concerning judicial review of labor arbitration awards, we reverse.

The arbitration matter in this case involved a grievance brought by the American Postal Workers Union (the "Union") on behalf of an employee who had been fired for alleged dishonesty in handling postal transactions. At the arbitration proceeding, the employer sought to introduce statements of the grievant made during a custodial interrogation by federal law enforcement officers; the arbitrator found that these statements were elicited before the grievant had been given *Miranda* [1]-type warnings and, on that account, ruled the statements inadmissible. The arbitrator then concluded that "[h]aving excluded the Grievant's statements which form the fundamental basis of the Postal Service charges, the removal action is not sustainable." [2] The arbitrator accordingly overturned the employee's dismissal and reduced it to a long disciplinary suspension without back pay. When the employer refused to comply with the arbitrator's award, the Union sought enforcement in District Court.

In a brief Memorandum Opinion, the District Court expressly acknowledged that the arbitrator's judgment was based on a plausible reading of the parties' collective bargaining agreement. However, the trial judge adopted an alternative interpretation of the agreement and found that the grievant's statements were admissible; the court then concluded that the arbitrator's award could not be enforced because it did not "draw its essence" from the contract as reinterpreted by the trial judge.

We reverse because the trial court's judgment is wholly at odds with federal law regarding labor arbitration. A court has no authority to discard a labor arbitration award which is concededly based on the collective bargaining agreement and then substitute its own view of the proper interpretation of the contract. The Supreme Court has explicitly prohibited a court from making such a substitution. An arbitrator's award must be upheld when it draws its essence from the collective bargaining agreement; it is the arbitrator's construction of the contract that the parties bargained for and not that of the court, and it does not matter wheth-

* Sitting by designation pursuant to Title 28 U.S.C. § 294(d).

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** *United States Postal Service v. American Postal Workers Union,* Case Nos. C1C–4A–D 14023 & C1C–4A–D 14024, at 18 (1983) (McAllister, Arb.) [hereinafter *Arbitrator's Opinion* ], *reprinted in* Appendix to Brief of Appellant at A–24.

er the court disagrees with the arbitrator's judgment on the merits. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

■ In the instant case, the collective bargaining agreement clearly states that, *under the contract*, the Postal Service promises to comply with "applicable laws." Therefore, as the District Court acknowledged, the arbitrator plainly had the authority to consider legal rules, including the possible requirement of a *Miranda* warning, in construing the contract. It is irrelevant whether the arbitrator's judgment was correct with respect to the applicability of *Miranda*. An arbitrator's reading of the contract is entitled to enforcement unless the award itself violates established law or seeks to compel some unlawful action. Here, the arbitrator's judgment was nothing more than a ruling on the admissibility of evidence, which drew its essence from the parties' contract and violated no established law. A court has no choice in such a circumstance but to uphold and enforce the arbitrator's award.

## I. Background

The grievant in the underlying dispute, Arthur Zimmerman, is a postal window and supply clerk. An investigation by the Postal Inspection Service revealed some irregularities in Zimmerman's accounts which led the Inspectors to believe that Zimmerman might be converting postal funds to personal use. Accordingly, an Inspector interviewed Zimmerman in the Postal Inspector's office regarding the suspected misappropriation of funds. After approximately one hour and twenty-five minutes of questioning, the Inspector read Zimmerman his *Miranda* rights and presented him with a waiver. Zimmerman then signed two statements admitting dishonesty in the handling of postal transactions.

The Inspection Service removed Zimmerman from his position and brought criminal charges against him. At the criminal trial, the court excluded Zimmerman's statements, ruling that they were the result of interrogation prior to the recitation of *Miranda* warnings and, therefore, were obtained in violation of the Fifth Amendment. Zimmerman was acquitted.

Hearings were later held before an arbitrator to determine whether the collective bargaining agreement allowed Zimmerman's removal from his position as postal clerk. Since the collective bargaining agreement provided that an employee could be removed only for "just cause," the parties agreed that the issue before the arbitrator was whether just cause existed for the discharge of Zimmerman. Although the Postal Service introduced evidence at the arbitration hearings which showed that Zimmerman had not followed postal regulations concerning the handling of postal funds, Zimmerman's own statements were the only evidence of his wrongful conversion of funds. The Postal Service urged the arbitrator to consider the statements. The Union argued that the statements should be excluded because they had been obtained through a custodial interrogation which was conducted before Zimmerman had been read his *Miranda* rights.

The arbitrator ruled that "just cause" for dismissal was absent. At the outset of his opinion, the arbitrator identified the Articles of the collective bargaining agreement and the postal regulations relevant to his inquiry.[3] Among the provisions cited by the arbitrator was Article 3, Management Rights, which requires that the discharge of a Postal Service employee must be "consistent with applicable laws and regulations."

The arbitrator's ruling turned on his judgment that Zimmerman's statements were inadmissible because they were obtained in violation of *Miranda*. In reach-

---

**3.** The arbitrator cited the following Articles as "pertinent": Article 3, Management Rights; Article 16, Discipline Procedure; Article 19, Handbooks and Manuals; and Article 28, Employee Claims. The arbitrator also cited sections concerning employee conduct and procedures for handling postal funds which are contained in various Postal Service Manuals. *Arbitrator's Opinion* at 3–5, *reprinted in* Appendix to Brief of Appellant at A–9 to A–11.

ing the conclusion that Zimmerman had been subject to a "custodial interrogation" prior to receiving *Miranda* warnings, the arbitrator noted that Postal Inspectors are federal law enforcement officers, that Zimmerman was an acknowledged suspect and that Zimmerman had been isolated from all outside contact during the questioning. The arbitrator then observed that *Miranda* warnings are a well-known safeguard to prevent individuals from being compelled to incriminate themselves when faced with criminal charges. Any statements made by the defendant during a custodial interrogation must be excluded from his criminal trial unless the Government shows that the defendant was warned of and validly waived his *Miranda* rights. The arbitrator concluded that Zimmerman's statements should be excluded in the civil removal proceedings, apparently because the Postal Inspectors sought to obtain the statements for a criminal prosecution.

The arbitrator refused to uphold Zimmerman's dismissal because the grievant's excluded statements were the only evidence of wrongful conversion. However, the arbitrator decided that Zimmerman's failure to follow postal regulations warranted some discipline. The discharge was accordingly reduced to a long disciplinary suspension without pay, to be recorded on Zimmerman's personnel record.

When the Postal Service declined to comply with the arbitrator's judgment, the Union brought an action in District Court to enforce the award. The District Court dealt with the case on cross-motions for summary judgment. In reviewing the arbitrator's award, the trial court correctly acknowledged that an arbitration award is entitled to deference from courts, so long as it "draws its essence" from the collective bargaining agreement. The District Court also clearly recognized that there was language in the parties' collective bar-

gaining agreement that "suggest[ed] other applicable law be applied which conceivably would include *Miranda* warnings." [4] The District Court, however, overturned the arbitration award based on *its* interpretation of Article 17, § 3 of the collective bargaining agreement, which provides that "[i]f an employee requests a steward or Union representative to be present during the course of an interrogation by the Inspection Service, such request will be granted." [5] The District Court reasoned that this section of the contract revealed that the parties to the collective bargaining agreement must have considered the rights of employees during an interrogation and agreed to procedures other than those provided by *Miranda*. The District Court therefore concluded that, under this alternative reading of the contract, *Miranda* warnings need not be given to employees prior to a custodial interrogation.

Having substituted its judgment for that of the arbitrator, the trial court had no trouble in concluding that the arbitrator's award did not draw its essence from the collective bargaining agreement. The District Court accordingly denied the Union's motion for summary judgment and granted that of the Postal Service. The Union appeals to this court.

## II. ANALYSIS

### A. *Standard of Review*

In the landmark opinions in the *Steelworkers Trilogy* the Supreme Court made it clear that a fundamental policy of national labor legislation is to promote voluntary, binding labor arbitration. The Court held that, where the parties have agreed to submit grievance disputes to arbitration, the courts have a very circumscribed role to play.

---

4. *American Postal Workers Union v. United States Postal Service*, Civ.Action No. 83–2921, slip op. at 4 (D.D.C. Jan. 22, 1985), *reprinted in* Appendix to Brief of Appellant at A–4.

5. Agreement between United States Postal Service and American Postal Workers Union, AFL–CIO, National Association of Letter Carriers, AFL–CIO, Art. 17, § 3 (July 21, 1981—July 20, 1984), *reprinted in* Appendix to Brief of Appellant at A–52.

In *United Steelworkers v. American Manufacturing Co.*,[6] the Court stated that courts have "no business weighing the merits of the grievance," because "[t]he agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."[7] Likewise, courts called upon to review and enforce arbitration awards have only a limited role to play. In *United Steelworkers v. Enterprise Wheel & Car Corp.*,[8] the Court stated that judges should not second-guess arbitrators' judgments, but should only look to see whether the award "draws its essence from the collective bargaining agreement."[9] And in *United Steelworkers v. Warrior & Gulf Navigation Co.*,[10] the Court made clear that the nature of a collective bargaining agreement is different from that of most contracts: "it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate;"[11] moreover, it is supplemented by the "common law of a particular industry or of a particular plant."[12] The labor agreement, in other words, is a constitution of industrial self-government, in which the knowledgeable arbitrator plays an integral part. Thus, a reviewing court's role is strictly limited to determining whether the arbitrator exceeded his or her authority under the agreement. The court is not to concern itself with whether the arbitrator resolved the issue correctly.

In *Enterprise Wheel*, the Court expressly recognized that an arbitrator, in construing an agreement, "may of course look for guidance from many sources."[13] The Court instructed that, even in the face of an ambiguous arbitration award, a judge has no authority to second-guess arbitral judgments;[14] "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."[15] Very recently, in *W.R. Grace & Co. v. Local Union 759, International Union of United Rubber Workers*,[16] the Court forcefully emphasized the continuing validity of the highly deferential standard of review enunciated in *Enterprise Wheel:*

> When the parties include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous.[17]

## B. Application of the Standard of Review

### 1. The Arbitrator's Decision Drew its Essence from the Collective Bargaining Agreement

We reject the District Court's decision in this case because it flies in the face of the legal principles enunciated in *Enterprise Wheel* and *W.R. Grace*. The trial court specifically stated that the arbitrator's interpretation was supported by a conceivable reading of the collective bargaining agreement. However, instead of accepting

---

6. 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

7. *Id.* at 568, 80 S.Ct. at 1346.

8. 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

9. *Id.* at 597, 80 S.Ct. at 1361.

10. 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

11. *Id.* at 578, 80 S.Ct. at 1351.

12. *Id.* at 579, 80 S.Ct. at 1351.

13. *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1358.

14. *See id.* at 598, 80 S.Ct. at 1361.

15. *Id.* at 599, 80 S.Ct. at 1362.

16. 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).

17. *Id.* at 764, 103 S.Ct. at 2182 (quoting *Enterprise Wheel*) (citations omitted).

the arbitrator's construction, the District Court adopted a different interpretation which it felt was superior. It is precisely this type of judicial selection between competing contract interpretations which is foreclosed by the mandate of *Enterprise Wheel.* The parties bargained for the arbitrator's construction of the contract and they are bound by it; a court has no authority to substitute its judgment for that of the arbitrator. At oral argument, even counsel for the Postal Service appeared to recognize that the District Court's rationale was fatally flawed.

We reinstate the arbitrator's award because, as the District Court initially recognized, it draws its essence from the collective bargaining agreement. It is plain that the contract gave the arbitrator the authority to consider the applicability of a *Miranda*-type rule. The arbitrator stated that pertinent contract language appeared, *inter alia,* in a provision of the agreement specifying that the discharge of Postal Service employees must be "consistent with applicable laws and regulations." The *Miranda* rule is surely within the realm of "applicable law" when interrogation by federal law enforcement officers leads to the discharge of an employee. Nothing in the contract describes how to handle such a situation, nor does the agreement prohibit an arbitrator from considering the *Miranda* rule.

When viewed from the proper perspective, this case involves a very routine dispute over the application of an evidentiary rule; such disputes are standard fare for arbitrators. The constitutional overtones emanating from the arbitrator's judgment to consider the applicability of *Miranda* in no sense alter the conclusion that the arbitrator's decision reflected his *interpretation of the contract.*

### 2. *An Alleged "Mistake of Law" Does Not Alter the Standard of Review*

■ The Postal Service emphasizes the arbitrator's statement that he would have upheld the discharge of Zimmerman "but

for" the *Miranda* violation which required exclusion of Zimmerman's admission. But the critical point in this case—which is sometimes lost in the heat of the battle over the merits of appellant's claim—is that it does not matter whether the arbitrator's construction and application of *Miranda* was correct as a "matter of law." During oral argument, counsel for the Postal Service conceded that, unless the contract expressly limited the arbitrator's authority, an arbitral decision to exclude evidence under the "hearsay rule" would not be subject to judicial review, *even* if the court believed that the arbitrator had made a so-called "mistake of law" in interpreting the hearsay rule. This hypothetical situation is essentially indistinguishable from the case at bar. In either case, the arbitrator's decision really concerns only the meaning of the contract. Therefore, courts need not fear that they are sanctioning bad law by not correcting arbitrators' alleged legal errors.

■ Professor Theodore St. Antoine's description of the arbitrator's role as that of designated "contract reader" for the parties is one of the better analyses of this point.[18] According to St. Antoine, the adoption of an arbitration clause indicates that the parties have agreed to employ an arbitrator as their "contract reader" and empowered him or her to render a binding interpretation of the collective bargaining agreement. When construction of the contract implicitly or directly requires an application of "external law," *i.e.,* statutory or decisional law, the parties have necessarily bargained for the arbitrator's interpretation of the law and are bound by it. Since the arbitrator is the "contract reader," his interpretation of the law becomes part of the contract and thereby part of the private law governing the relationship between the parties to the contract. Thus, the parties may not seek relief from the courts for an alleged mistake of law by the arbitrator. They have agreed to be bound by the arbitrator's interpretation without regard to

---

18. St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at* Enterprise Wheel *and its Progeny,* 75 MICH.L.REV. 1137 (1977).

whether a judge would reach the same result if the matter were heard in court. The parties' remedy in such cases is the same remedy they possess whenever they are not satisfied with the arbitrator's performance of his or her job: negotiate a modification of the contract or hire a new arbitrator.

In another brilliant article on this subject, Professor David Feller persuasively defends the federal labor policy of nonintervention in the arbitral process.[19] Feller correctly points out that, in the typical labor contract, a critically important part of the bargain is the agreement that disputes between the parties will be governed by the rules contained in the contract as they may be interpreted and applied by the parties' arbitrator. When the courts intervene and supply their own interpretation of the agreement, this undermines a substantial basis of the parties' bargain.

The views of Professor St. Antoine and Professor Feller are not the philosophical leanings of misguided scholars. Rather, their positions are precisely consistent with the views enunciated by the Supreme Court in *Enterprise Wheel* and *W.R. Grace & Co.* No matter how these cases are labeled, this circuit, and others as well, have recognized that:

> an award will not be vacated even though the arbitrator may have made, in the eyes of judges, errors of fact and law unless it "compels the violation of law or conduct contrary to accepted public policy."[20]

Thus, in the instant case, the legal propriety of the arbitrator's decision to exclude the employee's statements is irrelevant. Indeed, if a *district court* had made the same legal ruling while presiding over a civil trial, it is conceivable that we might reverse in light of the Supreme Court's ruling that statements obtained in violation of the Fourth Amendment are admissible in civil deportation hearings.[21] We are not, however, considering the decision of a district court on this legal issue, but rather the decision of an arbitrator. Our review of an arbitrator's award is strictly limited to determining whether the award draws its essence from the contract. We possess no unbridled authority to review the correctness of an arbitrator's decision of law under the contract.

3. *The Postal Service's Argument in Favor of an Alternative Reading of the Contract is Meritless*

■ Finally, we must reject the Postal Service's argument that the award does not draw its essence from the contract because the arbitrator did not adopt the alternative interpretation relied upon by the District Court. In particular, the trial court looked to Section 3 of Article 17 of the collective bargaining agreement, which provides that employees may request that a steward or Union representative be present during any interrogation. The Postal Service does not

**19.** Feller, *A General Theory of the Collective Bargaining Agreement,* 61 CALIF.L.REV. 663 (1973).

**20.** *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 442 F.2d 1234, 1239 (D.C.Cir.1971) (quoting *Gulf States Telephone Co. v. Local 1692, International Brotherhood of Electrical Workers,* 416 F.2d 198, 201 (5th Cir.1969)), *quoted with approval in Washington Hospital Center v. Service Employees International Union, Local 722,* 746 F.2d 1503, 1514 (D.C.Cir.1984); *see also Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953) ("interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation" (footnote omitted)); *Local 863 International Brotherhood of Teamsters v. Jersey Coast Egg Producers, Inc.,*

773 F.2d 530, 533 (3d Cir.1985) (erroneous interpretation of law is no grounds to set aside arbitral award); *Capital District Chapter of New York State, P.D.C.A. v. International Brotherhood of Painters, Local Union Nos. 201, 12 & 622,* 743 F.2d 142, 148 (2d Cir.1984) (citing *Wilko* for proposition that arbitrators' interpretations of law are not subject to judicial review for error in interpretation); *George Day Construction Co. v. United Brotherhood of Carpenters, Local 354,* 722 F.2d 1471, 1477 (9th Cir. 1984) (arbitral award which represents plausible interpretation of contract must be enforced notwithstanding erroneousness of legal conclusions).

**21.** *Immigration & Naturalization Service v. Lopez-Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984).

**8**

argue that the better interpretation of the contract rests on this section, but rather that the arbitrator failed to consider this section when construing the contract. If the arbitrator had rendered a judgment based on external legal sources, wholly without regard to the terms of the parties' contract, then the award could not be said to draw its essence from the contract. Such is not the case here. In the instant case, the arbitrator in his written opinion identified the pertinent contract provisions, including a provision which requires the Postal Service to act in accordance with "applicable laws" when discharging employees. Moreover, the arbitrator made clear that the issue was whether "just cause" existed—plainly a contract interpretation question. The arbitrator simply did not agree with the Postal Service's evaluation of which contract provisions were most relevant. The arbitrator's selection of pertinent contract provisions was *itself* an interpretation of the contract which this court has no authority to disturb. Therefore, we reject this argument by the Postal Service.

### 4. Considerations of So-Called "Public Policy"

There is one final point in this case that deserves mention. The Postal Service claims that, even if the arbitrator's award draws its essence from the contract, it should be set aside as violative of "public policy." We reject this contention as baseless under existing law.

■ As noted above, it is well-understood that courts will not enforce an arbitration award if the award itself violates established law or seeks to compel some unlawful action. However, this rule, which is sometimes referred to as a public policy exception, is *extremely narrow*. In *W.R.*

*Grace*, the Supreme Court has explained that, in order to provide the basis for an exception, the public policy in question "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " [22] Obviously, the exception is designed to be narrow so as to limit potentially intrusive judicial review of arbitration awards under the guise of "public policy."

It is not at all clear that the reference to "public policy" in *W.R. Grace* denotes anything more or different than what the courts have said over the years in construing *Enterprise Wheel*.[23] But, in any event, it is plain from the language in *W.R. Grace* itself that the Court meant to say only that an arbitration award may not be enforced if it transgresses "well defined" and "dominant" "laws and legal precedents." It is also clear from the opinion in *W.R. Grace* that judges have no license to impose their own brand of justice in determining applicable public policy; thus, the exception applies only when the public policy emanates from clear statutory or case law, *"not from general considerations of supposed public interests."*[24]

■ There is surely no doubt that the instant case does not pose a situation requiring the invocation of a public policy exception. The arbitrator's award was not itself unlawful, for there is no legal proscription against the reinstatement of a person such as the grievant. And the award did not otherwise have the effect of mandating any illegal conduct. In other words, even if the arbitrator's view of *Miranda* was wrong, his decision to exclude the grievant's statements did not in any manner violate the law or cause the em-

**22.** 461 U.S. at 766, 103 S.Ct. 442, 451, 89 L.Ed. 744 (quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)).

**23.** *See, e.g., Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 442 F.2d 1234, 1239 (D.C.Cir.1971) ("an award will not be vacated even though the arbitrator may have

made, in the eyes of judges, errors of fact and law unless it 'compels the violation of law or conduct contrary to accepted public policy' ").

**24.** *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183 (quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 442, 89 L.Ed.2d 744 (1945)).

ployer to act unlawfully.[25] In addition, and most importantly, the grievance plainly raised an arbitrable issue; the arbitrator was properly designated and authorized to hear the case; and the arbitral judgment rested on an interpretation of the contract.

The Postal Service seeks some solace from a decision of the First Circuit in which the court refused to enforce an arbitrator's reinstatement of a convicted felon.[26] Frankly, we find it difficult to square either the rationale or the result in the cited case with the Supreme Court's decision in *W.R. Grace;* however, we need not labor over the question here. In the instant case, the grievant was acquitted of all criminal charges; therefore, the case relied upon by the Postal Service is inapposite. In short, there is no valid basis whatsoever for us to decline to enforce the arbitrator's award on grounds of public policy. For us to embrace the employer's argument here would be to run the risk of allowing an ill-defined "public policy" exception to swallow the rule in favor of judicial deference to arbitration. We will not endorse any such blatant disregard of the teachings of *Enterprise Wheel* and *W.R. Grace.*

### CONCLUSION

For the reasons set forth above, the judgment of the District Court is reversed. The case is remanded to the trial court with instructions to enter judgment for the appellant.

*So ordered.*

---

25. *Cf. Washington Post v. Washington-Baltimore Newspaper Guild, Local 35,* 787 F.2d 604, 606 (D.C.Cir.1986) ("We need not defer to an award which contemplates a violation of law.").

26. *United States Postal Service v. American Postal Workers Union,* 736 F.2d 822 (1st Cir.1984).