**UNITED STATES POSTAL SERVICE, Appellant,**

v.

**NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL–CIO, Appellee.**

No. 85–5312.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1986.

Decided April 25, 1986.

Karen A. Intrater, Atty., U.S. Postal Service, with whom Stephen E. Alpern, Associate Gen. Counsel and Sherry A. Cagnoli, Asst. Gen. Counsel, Washington, D.C., were on brief, for appellant. Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., also entered an appearance, for appellant.

Keith E. Secular, New York City, with whom Sally M. Armstrong, Washington, D.C., was on brief, for appellee.

Before WRIGHT, WALD and BUCK-LEY, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

The United States Postal Service appeals from the District Court's award of summary judgment to the National Association of Letter Carriers ("NALC") in an action to vacate an arbitration award. The District Court sustained an arbitrator's decision that language in the NALC's collective bargaining agreement with the Postal Service subjecting the exercise of management rights to "applicable laws and regulations" required the Postal Service to pay a postal employee, in accordance with a Tennessee statute, for service on a local court jury. The legal issues raised in this appeal have, for the most part, been disposed of in this court's recent opinion in *American Postal Workers Union v. United States Postal Service*, 789 F.2d 1 (D.C.Cir.1986), to which we will refer frequently and whose basic rationale we follow. Like the *American Postal Workers* panel, we uphold the arbitrator's decision.

## I. BACKGROUND

Danny Williams, a part-time letter carrier in the Jackson, Tennessee, Post Office, asked the Postal Service to provide him with two days of paid leave to serve on jury duty in Huntington, Tennessee, in May of 1980. The Postal Service excused Williams from work but would not compensate him because its regulations only provide for paid "court leave" for part-time regular employees, not part-time flexible employees such as Williams.[1] Employee and Labor Relations Manual § 516.32, App. at 30. Williams filed a grievance, claiming that he was entitled to be paid for the two days he served as a juror pursuant to a Tennessee statute entitling all employees, including part-time workers, to their regular wages (less any compensation paid by the court) for serving on jury duty. Tenn.Code Ann. § 22-4-108 (1980).

The arbitrator held that the Postal Service had violated the collective bargaining agreement by failing to pay Williams. App. at 41–46. His decision relied on Article III of the agreement, the management rights clause, which provides that the management's actions must be "consistent with applicable laws and regulations." *Id.* at 46. The arbitrator found that the Tennessee statute was such a law: it was "applicable" to the Jackson Post Office and to Williams, because it did not distinguish between "regular" and "flexible" employees. *Id.* at 45–46. The arbitrator therefore concluded that flexible employees at the Jackson Post Office were entitled to paid court leave and ordered the Postal Service to compensate Williams for the two days. *Id.* at 46.

The Postal Service subsequently filed an action to vacate the arbitrator's award. The District Court awarded summary judgment upholding the arbitrator's decision, finding that his decision " 'drew its essence' from the collective bargaining agreement. *See* [*United Steelworkers of America v.*] *Enterprise Wheel and Car Corp.*, 363 U.S. 593, 59[7] 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)." District Ct.Op., App. at 26. The District Court found that the arbitrator's decision was a "plausible interpretation" of the contract and so met the *Enterprise Wheel* test as interpreted by this court in *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 166 (D.C.Cir.1981). District Ct.Op., App. at 28.

## II. ANALYSIS

We briefly reiterate the principles governing this court's review of labor arbitration decisions, which are explained more fully in our recent decision in *American Postal Workers*. A court must uphold an arbitrator's decision which "draws its essence from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1358. If the arbitrator's decision did "draw its essence" from the con-

---

1. Flexible employees, unlike regular employees, have no fixed work hours and are available to work flexible hours as assigned. Employee and Labor Relations Manual § 432.111(b), App. at 31.

tract, "a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous." *W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

## A. *The Contract Interpretation*

■ The Postal Service argues that the arbitrator's decision did not draw its essence from the collective bargaining agreement but rather "relied on a state law whose terms were directly contrary to the express and unambiguous language of the contract." Appellant's Br. at 8. An award by an arbitrator does not, of course, draw its essence from the contract if it is "based on external legal sources, wholly without regard to the terms of the parties' contract." *American Postal Workers,* 789 F.2d at 8.

■ Here, however, the arbitrator did not rely directly on the Tennessee statute but rather on the language of the collective bargaining agreement requiring management decisions to be consistent with applicable law. In *American Postal Workers,* this court held that this very language in the Postal Service's collective bargaining agreement could plausibly be read to incorporate the constitution as applicable law; the panel accordingly upheld an arbitrator's decision to exclude evidence from a discharge proceeding which the arbitrator concluded was inadmissible under the *Miranda* rule. 789 F.2d at 6. Like the constitution, the Tennessee statute is also an "applicable law" and thus, as in *American Postal Workers,* we hold that the real basis of the arbitrator's award lies in the collective bargaining agreement, not in the local statute itself.

■ Neither does the contract provision limiting paid court leave to regular employees alter our conclusion that the arbitrator's decision must be upheld. The arbitrator was aware of this contract provision; in

fact, he quoted the entire provision and carefully pointed out that the applicable Tennessee statute made no similar distinction between regular and flexible employees. App. at 42–43, 45. In *American Postal Workers,* the Postal Service had similarly argued that the arbitrator should have relied upon a more specific provision of the contract. This court held that the arbitrator's decision had to be upheld because the arbitrator had considered all of the pertinent contract provisions and his conclusion as to which provision controlled "was *itself* an interpretation of the contract which this court has no authority to disturb." 789 F.2d at 8. Here, too, the arbitrator's conclusion—that the management rights provision incorporated state law so as to supersede an inconsistent provision of the collective bargaining agreement—is a plausible reading of the contract which we have no authority to disturb.

## B. *The Public Policy Argument*

■ The Postal Service argues that, even if the arbitrator's award drew its essence from the contract, that decision must be overturned because it is contrary to a well-defined public policy of federal supremacy or preemption, under which the Postal Service's operations are not to be subjected to a patchwork of conflicting state laws. The Postal Service relies on the so-called "public policy exception" derived from *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2184, under which a court can vacate an arbitration award which compels conduct contrary to a well-defined public policy. In *American Postal Workers,* this court rejected an invitation to invoke the public policy exception, finding that the exception "is designed to be narrow so as to limit potentially intrusive judicial review of arbitration awards under the guise of 'public policy.'" 789 F.2d at 8. We find that this narrow exception is not implicated by the facts of this case.

The arbitrator's decision does not threaten to impair postal operations by subjecting

the Postal Service to the dictates of all state and local laws. It applies one Tennessee statute to a small class of employees at one post office; it has no precedential value as an interpretation of the management rights clause. Further, the Postal Service concedes that the public policy of federal supremacy does not preclude it from *agreeing* to subject itself to the Tennessee law, but claims that it never made any such agreement here. We have, however, upheld the arbitrator's reading of the contract to embody an agreement by the Jackson Post Office to pay flexible employees for serving on jury duty in accordance with Tennessee law. Because the contract has been interpreted by the arbitrator to include an *agreement* by the Postal Service to comply with this particular statute as "applicable law," any public policy against *compelling* the Postal Service to obey such laws is inapposite. Thus, while we acknowledge the validity of the government's concern over the public policy ramifications of allowing Postal Service operations to be impaired by conflicting state and local laws, we conclude that this policy is not implicated in the unique circumstances of this case.

### III. CONCLUSION

We in no way endorse the arbitrator's reading of the contract as the *correct* reading of that agreement: we might well have reversed a district court which had drawn such a legal conclusion. "We are not, however, considering the decision of a district court on this legal issue, but rather the decision of an arbitrator. Our review of an arbitrator's award is strictly limited to determining whether the award draws its essence from the contract." *American Postal Workers,* 789 F.2d at 7. Because we find that the arbitrator's decision did draw its essence from the contract, and because the Postal Service's invocation of the public policy exception is inapposite, the arbitrator's award and the District Court's affirmance of it are

*Affirmed.*