Pursuant to the memorandum filed herein this day.

**IT IS HEREBY ORDERED** that defendants Thuston's motion to dismiss filed December 30, 1985 is denied as to Counts I (10b–5), III (fraud), V (breach of fiduciary duty), IX and X (conversion); granted as to Count II (RICO); and granted in part as to Counts VI and VII (Missouri securities law).

**IT IS FURTHER ORDERED** that defendants are granted leave to amend Count IV (§ 77*l* (2) of the Securities Act of 1933).

**IT IS FURTHER ORDERED** that defendant John Thuston's separate motion for summary judgment is denied.

**IT IS FURTHER ORDERED** that defendant Ann Thuston's separate motion for summary judgment is granted.

**IT IS FURTHER ORDERED** that plaintiffs' cross-motion for summary judgment is denied.

**NATIONAL RURAL LETTER CARRIERS' ASSOCIATION, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

Civ. A. Nos. 85–1089, 85–3214.

United States District Court, District of Columbia.

June 24, 1986.

David S. Barr, David J. Cohen, Washington, D.C., for plaintiff.

George P. Williams, Asst. U.S. Atty., for the District of Columbia, D. Richard

Froelke, Asst. General Counsel, Washington, D.C., U.S. Postal Service, for defendant.

### MEMORANDUM

SPORKIN, District Judge.

This matter is before the Court on cross motions for Summary Judgment. Both parties agree that this case, which arises out of an arbitration award reinstating a rural mail carrier to the United States Postal Service (USPS), can be resolved by Summary Judgment. Subsequent to the arbitration award, the National Rural Letter Carriers' Association (NRLCA) commenced an action in this Court to enforce the award (CA 85–1089). At approximately the same time, the USPS brought suit in the United States District Court for the Western District of Missouri to vacate the award. By an Order dated October 8, 1985, that case was transferred to this Court (CA 85–3214). Since the issues and facts of both actions are identical, this decision will dispose of both cases.[1]

The facts giving rise to this case are uncontroverted and are succinctly set forth in the arbitrator's opinion [2] as follows:

Grievant was a Rural Letter Carrier employed at the Lowry City Station of the Kansas City, Missouri Post Office. On February 7, 1984, he opened an undeliverable parcel containing a five-dollar bearer refund check from Standard Brands, Inc., and a fifty-cent piece. He cashed the check and kept the half dollar. What he did not know was that the parcel was "bait" which had been placed in the mail stream by the Postal Inspection Service. From time to time, test mailings of this kind are used to assess employee honesty and identify thieves. Test mail is generally misaddressed or otherwise undeliverable items which appear valuable. When Grievant failed to return the parcel to the post office for processing, the Inspection Service target-

ed him for further investigation. Two "live" tests were administered. In a "live" test, a suspect is placed under surveillance while s/he is handling test mail. Grievant passed both tests; he returned the undeliverable items to the post office without disturbing them.

The investigation ended in mid-April, 1984. The suspicion that Grievant took the test parcel from the mail stream on February 7 was confirmed when the five-dollar check was recovered. It had been negotiated and bore Grievant's endorsement. On April 13, while he was delivering mail, Grievant was arrested by a postal inspector. He was taken to the post office where he made a voluntary confession. He was cooperative and remorseful. His statement went beyond the matter at hand—theft of mail; he also admitted to unauthorized curtailments. On several previous occasions, he postponed delivering magazines in order to read them himself. Grievant's statement concluded with an expression of his willingness to make restitution for what he had stolen.

On April 13, the Inspection Service reported its findings to the Lowry City Postmaster. Upon the advice of a labor relations representative of the Kansas City Management Sectional Center (MSC), the Postmaster immediately placed Grievant on emergency suspension. On April 19, she mailed a Notice of Proposed Removal to the Employee citing both theft of mail and curtailments of magazines as the reasons for the action. On May 27, 1984, the MSC Postmaster issued a Letter of Decision stating that the removal would be effective on June 1.

Grievances were initiated challenging both the emergency suspension and the removal. They remained unresolved and the Union processed an appeal to arbitration....

---

1. On June 11, 1986, this Court issued an Order consolidating both cases.

2. USPC–NRLCA Contractual Grievance Proceedings, Central Region, Arbitration Opinion and Award, January 12, 1985 at 1, 2.

The Arbitrator, in ordering Grievant's reinstatement with back pay, disregarded Grievant's misconduct and based his decision solely on his finding that the USPS had failed to comply with the appropriate procedures set forth in the collective bargaining agreement (CBA) for disciplining U.S. Postal Service employees.

The CBA requires that disciplinary action against an employee be initiated by his local supervisor. The Arbitrator specifically found that:

> ... The evidence in this case confirms that the decision to discharge Grievant was wholly made and concurred in by the MSC [Kansas City Management Sectional Center] without any discretionary judgment by the [local] Postmaster.[3]

In concluding that reinstatement of the Grievant was required because of this procedural flaw, the arbitrator noted:

> ... when higher-level authority does more than advise: when it takes over the decision-making role and eliminates the contractual responsibility of local Supervision—and then concurs in its own decision—a substantive due-process violation occurs.
>
> Such violation cannot be overlooked as a mere technicality. The negotiated bilevel disciplinary procedure provides a unique protection for employees. It cannot legitimately be disregarded, and the Employer's neglect to follow it creates a breach of contractually established due process requirements of such importance as to require that the resulting discipline be overturned ... Under these circumstances, the Arbitrator finds that he has no alternative other than to sustain the grievance.[4]

The USPS does not challenge the arbitrability of the grievance nor does it seek review of the arbitrator's interpretation of the contract. The USPS's sole basis for seeking to vacate the award is premised on its claim that the reinstatement of a postal employee who has admittedly engaged in mail theft is contrary to public policy. No such claim was presented in the arbitration proceeding.

This Court believes the disposition of this matter is governed by the recent decision of the United States Court of Appeals for the District of Columbia in *American Postal Workers Union v. United States Postal Service*, 789 F.2d 1 (D.C.Cir.1986). The Court of Appeals made it clear that the trial court:

> ... has no authority to discard a labor arbitration award which is concededly based on the collective bargaining agreement and then substitute its own view of the proper interpretation of the contract. The Supreme Court has explicitly prohibited a court from making such a substitution. An arbitrator's award must be upheld when it draws its essence from the collective bargaining agreement; it is the arbitrator's construction of the contract that the parties bargained for and not that of the court, and it does not matter whether the court disagrees with the arbitrator's judgment on the merits. *See United Steel Workers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 599 [80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424] (1960)....
>
> ... An arbitrator's reading of the contract is entitled to enforcement unless the award itself violates established law or seeks to compel some unlawful action....[5]

Thus, the role of this Court, in its review of the arbitrator's award is quite limited. As further emphasized by the Court of Appeals:

> [A] reviewing court's role is strictly limited to determining whether the arbitrator exceeded his or her authority under the agreement. The Court is not to concern itself with whether the arbitrator resolved the issue correctly.[6]

---

**3.** Arbitration Award and Opinion at 13.

**4.** *Id.* at 12–13.

**5.** *American Postal Workers Union*, 789 F.2d at 2 and 3.

**6.** *Id.* at 3.

**1044**

■ The Court of Appeals also provides specific guidance with respect to the public policy exception to the enforcement of an arbitrator's award. Under this *"extremely narrow"* exception, courts "will not enforce an arbitration award if the award itself violates established law or seeks to compel some unlawful action." [7] It is quite clear in this case that the arbitrator's award neither violates existing law nor mandates an unlawful act.

The USPS, fully aware of the facts and having conceded the arbitrability of the claim, cannot now be heard to say that simply because the decision of the arbitrator was not the one it was advocating, the decision was contrary to public policy. To so hold would make a mockery of the arbitration process because it would, in effect, give the USPS the unfettered right to simply ignore the arbitrator's award in instances where the arbitrator's decision is contrary to the position advocated by the USPS.

The choices before the arbitrator were either to agree with the USPS's position and sustain Grievant's firing or concur in the NRLCA's position and reinstate the Grievant. The arbitrator simply chose the latter course and cannot be held to have violated public policy by doing so. The collective bargaining process would not be fostered by the adoption of USPS's position.

The decision as to what disposition should be made regarding Grievant's continued employment was placed squarely before the arbitrator precisely as it has been done in numerous other cases.[8] While this Court does not in any way condone claimant's conduct, the record shows that there are other arbitration awards involving so-called "bait mail" thefts very similar to the instant case where the USPS decided not to appeal a reinstatement award. Thus, the "public policy" issue articulated by the USPS against allowing the continued employment of a postman who has flunked the "bait mail" test may not be the burning issue that the USPS would have the Court believe it is.

The parties having agreed to submit Grievant's employment status to arbitration and there being no objection to the award on its merits, the Court finds no basis to disturb the arbitrator's decision. While the Court will sustain the award in this case, it is deeply concerned that the arbitrator's decision is based entirely on the USPS's inability to comply with the rather simple disciplinary procedures set forth in the CBA. It must be remembered that in addition to the USPS and the NRLCA, the public has a vital interest in the manner in which the mail is delivered. The public's right to be served by faithful postal employees is an extremely important one. Therefore, it is hoped that the USPS either will take the simple steps necessary to meet the procedural requirements of the CBA [9] or if it is unwilling or unable to do that, renegotiate the provision in question to eliminate the draconian effect of noncompliance.

■ The NRLCA, in addition to seeking enforcement of the arbitrator's decision, requests attorney's fees and costs. The only stated basis for this request is a short statement made by counsel at oral argument that the law requiring the upholding of the arbitrator's award is so clear that such additional relief is warranted. The Court cannot concur. The arbitrator's award was based strictly on a procedural flaw and, in the Court's view, the USPS was justified in raising the substantive issue. It was not until the Court of Appeals handed down its decision in *American Postal Workers Union, supra,* on April 18, 1986 that the law of this Circuit was clearly enunciated. Accordingly, the Court will enforce the arbitrator's award but will deny the request for attorney's fees. Oth-

---

7. *Id.* at 8.

8. The Court notes that Grievant was not prosecuted for his indiscretion.

9. The Court notes that the arbitrator referred to other cases where the USPS did not comply with the procedural requirement involved in this case. Arbitration Award and Opinion at 8–11.

er costs that are customarily awarded to the prevailing party in actions of this kind will be awarded to the NRLCA. The NRLCA, on notice, shall submit an appropriate form of Order in accordance with this decision.