**WASHINGTON HOSPITAL CENTER, Plaintiff,**

v.

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 722, AFL–CIO, Defendant.**

**Civ. A. No. 92–155 SSH.**

United States District Court, District of Columbia.

Aug. 18, 1992.

Allen G. Siegel, Arent, Fox, Kintner, Plotkin & Kahn and Gregory M. Murad, Washington, D.C., for plaintiff.

Mose Lewis, III, Powers & Lewis, Washington, D.C., for defendant.

OPINION

STANLEY S. HARRIS, District Judge.

This matter, which concerns an arbitrator's award under a collective bargaining agreement, is before the Court on crossmotions for summary judgment. The Court has jurisdiction to hear this matter under § 301 of the Taft–Hartley Act, 29 U.S.C. § 185.[1]

---

1. "Suits for violation of contracts between an ___ employer and a labor organization ... may be

Plaintiff filed this action, requesting that the Court vacate an arbitration award and order a rehearing. Plaintiff contends that the arbitrator exceeded his powers by ruling on an issue not before him. Plaintiff also contends that the arbitrator failed to rule on two of the three issues that were before him. (Compl. ¶¶ 20–21.) Defendant responds by seeking enforcement of the award and costs, expenses, and attorney's fees. (Answer at 3.)

The parties each moved for summary judgment. Plaintiff contends that the arbitrator's award does not draw its essence from the contract; defendant contends that it does. Defendant also requests that in addition to the relief requested in its answer, the Court award back pay from the date of the arbitrator's award.

For the reasons stated below, the Court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment with the exception of defendant's request for back pay beyond that which was awarded by the arbitrator and is allowed by the collective bargaining agreement. The Court also denies defendant's requests for costs, expenses, and attorney's fees.

## I. BACKGROUND

### A. *The Agreement*

Plaintiff Washington Hospital Center (the Hospital) and defendant Service Employees International Union, Local 722, AFL–CIO (the Union) are parties to a collective bargaining agreement (the Agreement) effective October 7, 1990, through October 9, 1993.

The Agreement contains two provisions for discipline and discharge. Section 3.1 allows for discipline up to and including discharge for "just cause." Disciplinary action taken pursuant to § 3.1 is "subject to grievance and arbitration for the purpose of determining whether or not an employee actually committed the act cited or whether the punishment applied was appropriate in light of the facts of the case."

Section 3.2 provides for a system of progressive discipline for offenses that are not enumerated in § 3.1 and which do not constitute gross misconduct. For offenses falling under § 3.2, the steps of disciplinary action are as follows: (1) first offense— written warning; (2) second offense—written warning and conference; (3) third offense—suspension; and (4) fourth offense—discharge. .

The Agreement also contains a grievance procedure culminating in arbitration. (Agreement, article IX.) This procedure is the exclusive mechanism for resolving disputes under the Agreement, including disputes regarding disciplinary action under §§ 3.1 and 3.2. The arbitrator's authority to hear and decide grievances is set out in § 10.2 of the Agreement. That section states:

> The arbitrator shall have the authority to apply the provisions of the Agreement and to render a decision on any grievance properly coming before him, but he shall not have the authority to amend or modify this Agreement. Further, he shall have the authority to apply and interpret the provisions of this Agreement only insofar as may be necessary to the determination of such grievance. Awards may or may not be retroactive, depending upon the determination of the equities of each case. In the event any arbitral award is issued providing for back wages or other retroactive relief, the employees involved shall never be entitled to an amount exceeding one hundred (100) days of pay or other retroactive relief.

### B. *Facts*

The parties are in agreement as to the following facts. On June 28, 1991, Caesar Guest, an orderly employed at the Hospital, was terminated for violating three hospital rules: (1) unauthorized absence from his assigned work area; (2) being in an unauthorized area (Unit 4–D); and (3) intimidating a fellow employee. The Union grieved Guest's termination. The grievance was

brought in any district court of the United States having jurisdiction of the parties without

respect to the amount in controversy." 29 U.S.C. § 185(a).

denied. The Union then filed a notice to arbitrate. Prior thereto, Guest had been disciplined on January 22, 1990, March 20, 1991, and May 7, 1991, at steps I, II, and III of progressive discipline. At step III the hospital disciplined Guest for allegedly intimidating a fellow employee, use of obscene language, being in an area without authorization, and unauthorized absence from an assigned work area. Pursuant to the Agreement, Guest was suspended. The Union grieved the step III suspension, which grievance was denied. The Union then filed a notice to arbitrate and the parties selected William P. Hobgood to hear the step III grievance. The hearing was scheduled for September 26, 1991. Subsequently, the parties decided to submit only the step IV grievance to Arbitrator Hobgood.

The arbitrator sustained the grievance and reinstated Guest with 100 days back pay and no break in seniority. The arbitrator found that the contract provided two mechanisms for discharging an employee: sections 3.1 and 3.2 as described above. The arbitrator further found that in order to sustain a discharge under § 3.2 progressive discipline, the Hospital must show that all four steps of the process had been met. (Arbitrator's Op. FMCS # 91–27157 at 5.) The arbitrator held that the step III suspension was not sufficiently supported, and therefore "[h]aving failed to support its third step suspension action, the Employer's discharge based on progressive discipline cannot be sustained." *Id.* at 5. The arbitrator then held that a § 3.1 discharge could not be sustained either because "[t]here [was] insufficient evidence to indicate" that the grievant knew or should have known that he had not properly signed out of his work area and that he

was not authorized to be in Unit 4–D. *Id.* at 6.

## II. ANALYSIS

█ More than 30 years ago, in *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and the *Steelworkers Triology*,[2] the Supreme Court articulated the federal policy favoring voluntary binding arbitration of labor disputes under a collective bargaining agreement over litigation.[3] In order to further this policy, the Supreme Court defined a limited role for judicial review of arbitration awards. A reviewing court is only to decide whether the grievance is arbitrable, *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), and, if so, whether the arbitrator's award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The courts are not to decide the merits of the grievance. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Nor are the courts to interpret the contract. Contract interpretation is the exclusive domain of the arbitrator. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362. *See also American Postal Workers v. United States Postal Service*, 789 F.2d 1, 2–3 (D.C.Cir.1986) ("An arbitrator's award must be upheld when it draws its

---

2. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

3. *See also Devine v. White*, 697 F.2d 421, 435 (D.C.Cir.1983) ("It has long been recognized that arbitration of such disputes is faster, cheaper,

less formal, more responsive to industrial needs, and more conducive to the preservation of ongoing employment relations than is litigation; that arbitration is perceived to produce results that are qualitatively superior to the results achieved through litigation in comparable personnel and labor relations matters; and that the overwhelming majority of union and management officials prefer arbitration over resort to the courts.").

essence from the collective bargaining agreement; it is the arbitrator's construction of the contract that the parties bargained for and not that of the court, and it does not matter whether the court disagrees with the arbitrator's decision."). "A reviewing court's role is strictly limited to determining whether the arbitrator exceeded his or her authority under the agreement. The court is not to concern itself with whether the arbitrator resolved the issue correctly." *American Postal Workers*, 789 F.2d at 5.

Both parties before this Court agree that the underlying grievance is arbitrable. The only issue in dispute is whether the arbitrator exceeded his authority; in other words, whether the arbitrator drew the essence of the award from the contract.

The Hospital contends that the arbitrator did not draw the essence of the award from the contract because the award was based in part on a review of the step III grievance. The step III grievance, the Hospital contends, was not properly before the arbitrator and therefore was not a proper basis for the award. The Hospital bases its assertion on § 10.2 of the Agreement and several cases from other jurisdictions which hold that an arbitrator cannot decide issues not presented to him by the parties. (Plaintiff's motion for summary judgment at 6–7.) The step III grievance, the Hospital argues, was not presented to the arbitrator by the parties.

The Hospital is correct to the extent that had the arbitrator attempted to reach a final and binding decision on the step III grievance, he would have been acting outside his authority. The parties agreed to binding arbitration before Arbitrator Hobgood for the step IV discharge only, not the earlier suspension. Arbitrator Hobgood, however, did not attempt to bind the parties to his decision regarding the step III grievance. Nor does either of the par-

ties contend that it has been so bound.[4] Arbitrator Hobgood simply interpreted § 3.2 of the Agreement. According to his interpretation "[t]o sustain a discharge under [progressive discipline], the employer must establish just cause as the basis for the grievant's discharge by demonstrating that all four steps of the progressive discipline process 3.2(a) have been met." (Arbitrator's Op. at 5–6.) As stated above, it is the role of the arbitrator to interpret the contract. That role clearly includes interpreting the standard for just cause.

■ The arbitrator's decision to rule in this manner was based on his interpretation of the Agreement. A court can only reject an arbitrator's interpretation of a collective bargaining agreement when the court is convinced that the decision was "procured by the parties through fraud or through the arbitrator's dishonesty...." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987), or if the decision is based on nothing more than the arbitrator's "own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361.[5] Otherwise, "as long as the arbitrator is even arguably construing or applying the contract," the arbitrator's interpretation of the contract must be upheld. *United Paperworkers*, 484 U.S. at 38, 108 S.Ct. at 366.

■ Having interpreted the contract this way, the arbitrator then went on to examine whether the Hospital had in fact demonstrated that all four steps of progressive discipline had been met. The arbitrator found that the step III suspension was based on "unsupported allegations." (Arbitrator's Op. at 5.) The arbitrator was made aware of these allegations and the other circumstances surrounding the step III suspension by the Hospital. It was the Hospital's contention that the grievant's presence in Unit 4–D constituted intimi-

---

**4.** Indeed, the parties already have agreed to arbitrate the step III grievance in a separate proceeding before Arbitrator Aronin on June 26, 1992. (Attach. 1 to plaintiff's supplement to statement of material facts.)

**5.** A court also may overturn an arbitrator's award if it is contrary to public policy. *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 764–66, 103 S.Ct. 2177, 2182–83, 76 L.Ed.2d 298 (1982). No such issue has been raised in this case.

dation because of the events which allegedly occurred in May of 1991 and led to the grievant's step III suspension. (Plaintiff's post-hearing brief at 8–9.) Since the arbitrator found that step III of the progressive discipline had not been met, he found he could not uphold the discharge under the provision of the Agreement allowing for progressive discipline.

Under the applicable standard of review, there is no evidence in the record to support disrupting the arbitrator's decision regarding the step IV discharge. The arbitrator's interpretation of the agreement was a rational one. This is all that is needed to satisfy the standard. Therefore, there is no basis on which this court properly can overturn the arbitrator's decision regarding the burden of proof needed to sustain a step IV discharge.

Having found that the Hospital had not met its burden of proof under progressive discipline, the arbitrator examined the discharge under the more exacting standard of § 3.1. The Hospital, however, contends that the arbitrator did not rule on all three of the charges against the grievant, any one of which could sustain a discharge under § 3.1. The Court finds that the arbitrator did rule on all three counts before him.

The charge of intimidating a fellow employee was based directly on the events that allegedly occurred at step III. The Hospital contends that an employee was intimidated by the mere presence of the grievant. This employee was said to have found the grievant's presence intimidating because of events which led to the step III suspension. (Plaintiff's post-hearing brief at 8–9.) Since the arbitrator found that there was insufficient evidence to support the allegation at step III, he reasonably found no evidence upon which to uphold a § 3.1 discharge for intimidating that employee.

The two other charges against the grievant were for unauthorized absence from his assigned work area and presence in an unauthorized area. While it is true that the arbitrator did not fully spell out his reasons for sustaining the grievance on

these counts, he was not required to do so. *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361 ("Arbitrators have no obligation ... to give their reasons for an award."). The arbitrator did state that "[t]here is insufficient evidence to indicate that the employer's expectations or the consequences for the Grievant's failure to meet those expectations were ever adequately communicated to the Grievant." (Arbitrator's Op. at 6.) It is clear to this Court from the opinion in its entirety that this statement refers to the rules regarding how the grievant was to sign out of his work area and where he was allowed to go when he did. In addition, there is ample evidence in the record to support the arbitrator's conclusion.

■ Finally, the Union has asked the Court to award back pay to the grievant beyond that which was granted by the arbitrator and is provided for in the Agreement. The Union claims that the limit on back pay which can be awarded under the Agreement was nullified with respect to this action when the Hospital refused to reinstate the grievant on the arbitrator's order over six months ago. This Court has no authority to grant the relief requested. The Agreement is clear. Back pay for more than 100 days can "never" be awarded. (Section 10.2 of the Agreement.) This provision is not contrary to public policy. The Union agreed to the provision and it is now bound by it. All of defendant's requests for costs, expenses, and attorney's fees are also denied.

## III. CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.