**DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT, Appellant,**

v.

**DISTRICT OF COLUMBIA PUBLIC EMPLOYEE RELATIONS BOARD, Appellee.**

No. 05–CV–675.

District of Columbia Court of Appeals.

Argued May 24, 2006.

Decided June 29, 2006.

---

Edward E. Schwab, Deputy Attorney General for the District of Columbia, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, was on the brief, for appellant.

Cedar P. Carlton, with whom Bruce A. Fredrickson and Linda M. Correia were on the brief, Washington for appellee.

Before FARRELL and RUIZ, Associate Judges, and SCHWELB, Senior Judge.*

FARRELL, Associate Judge:

The Metropolitan Police Department (MPD) appeals from an order of the Superior Court in turn affirming a decision by the District of Columbia Public Employees Relations Board (PERB) which sustained an arbitrator's dismissal of misconduct charges that had resulted in MPD's discharge of Angela Fisher, an MPD police officer. For the reasons that follow, we affirm the order of the Superior Court.

## I.

On April 6, 2001, following a hearing by an MPD Adverse Action Panel, Fisher was discharged for off-duty misconduct in June 1998 in Maryland and for false statements she made to MPD investigators about what had occurred on that date. In accordance with a collective bargaining agreement (the Agreement) between the Fraternal Order of Police (FOP) and MPD, the FOP—on Fisher's behalf—sought arbitration of the discharge decision. The FOP argued, in part, that the MPD panel's decision had come too late under Article 12, Section 6 of the Agreement. The arbitrator agreed. Without rehearing the evidence or disputing MPD's findings with respect to the misconduct, he found that "roughly 600 days" had elapsed between when the MPD panel convened to hear the charges against Fisher and when it issued its decision and recommended her discharge, and that this "extraordinary delay beyond the 55-days allowed for the [MPD] to provide [Fisher] a written decision ... clearly violates the mandate of that provi-

* Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

sion."[1] He further rejected MPD's position that any violation of the 55–day rule was non-prejudicial or "harmless error," stating:

Section 6 is plainly intended to provide grievant with reasonably prompt notice of her status after charges are preferred against her, unless she waives entitlement to such notice.... [T]he right [Fisher] here asserts was a bargained-for procedural right which created in essence a substantive right[, ... and] failure to issue the decision within the 55 days, as pr[e]scribed, must be viewed as harmful error. [Citation and internal quotation marks omitted.]

The effect of the arbitrator's ruling was to require reinstatement of Fisher with back pay.[2]

MPD appealed the arbitrator's decision to PERB, see D.C.Code § 1–605.02(6) (2001), which affirmed. PERB explained in part:

We have held that an arbitrator's authority is derived from the parties' agreement and any applicable statutory and regulatory provision.... In addition, we have held that by agreeing to submit the settlement of a grievance to arbitration, it is the [a]rbitrator's interpretation, not the Board's that the par-

ties have bargained for.... MPD ... claims that the [a]rbitrator's [a]ward is contrary to law and policy[, but w]e have held that a disagreement with the arbitrator's interpretation ... does not make the award contrary to law and public policy.... In the present case, MPD's claims involve only a disagreement with the [a]rbitrator's interpretation of Article 12, Section 6 of the [Agreement;] ... MPD has failed to point to any clear or legal public policy which the [a]ward contravenes. [Internal citations, quotation marks, and brackets omitted.]

On MPD's petition for review of PERB's decision in the Superior Court, that court affirmed, agreeing with PERB "that an arbitrator ... act[s] within [his] authority by imposing a penalty upon MPD [for violation of Article 12, Section 6] without first making a finding of harmfulness."

This appeal followed.

## II.

Although MPD argued before the arbitrator and PERB that it had not violated Article 12, Section 6 of the Agreement, it no longer makes that argument. Furthermore, as it must, MPD concedes

1. Article 12, Section 6 of the Agreement states:

The employee shall be given a written decision and the reasons therefore no later than fifty-five (55) days after the date the charges are preferred or the date the employee elects to have a departmental hearing, where applicable, except that:

(a) when an employee requests and is granted a postponement or continuance of a scheduled hearing, the fifty-five (55) day time limit shall be extended by the length of the delay or continuance, as well as the number of days consumed by the hearing;

(b) when the employee requests and is granted an extension of the time allotted for answering the notice of proposed action, the

fifty-five (55) day time limit shall be extended by the length of the extension of time; and

(c) when the employee agrees to an extension of time requested by the agency, the fifty-five (55) day time limit shall be extended by the length of the extension of time.

2. The arbitrator also found that the MPD panel had violated Fisher's due process rights by unduly limiting her ability to cross-examine two witnesses at the hearing. In view of our disposition of this appeal, we have no occasion to consider PERB's affirmance of that part of the arbitrator's ruling as well, for in the arbitrator's judgment the "violation alone" of the 55–day rule required "the proceeding against [Fisher to be] dismissed as without cause."

that PERB's authority to set aside an arbitrator's award is restricted—in this case, limited to determining whether "the award *on its face* is contrary to law and public policy." D.C.Code § 1–605.02(6) (emphasis added). MPD contends, however, that in refusing to conduct any inquiry into whether Fisher suffered prejudice from violation of the 55–day rule, the arbitrator—and PERB in turn—ignored clear law requiring resultant prejudice or harm in analogous contexts, as well as public policy that counsels against requiring an agency such as MPD to retain in its ranks a police officer shown to be unfit merely because of a procedural violation in bringing charges against her. We hold that MPD has not met the demanding test for setting aside the decision of an arbitrator by whom it has agreed—as part of a comprehensive collective bargaining agreement—to be bound absent an award that "on its face" violates controlling "law and public policy."

MPD points first to what it terms the "universally recognized" command that prejudice be shown (or that a party be allowed to show *no* resulting prejudice) before a procedural error is determined to require reversal. Starting from the statutory harmless error rule that governs review proceedings in federal courts and this court,[3] MPD moves closer to the issue at hand by citing the Supreme Court's recognition in *Cornelius v. Nutt,* 472 U.S. 648, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985), that the "harmful error" rule applicable by statute to employment decisions of federal agencies governs both employee appeals to the Merit Systems Protection Board (MSPB) and grievance procedures subject to arbitration under federal collective bar-

gaining agreements. *Cornelius,* however, merely confirms MPD's inability to point to a law violated "on its face" by the arbitrator's interpretation of Article 12, Section 6. At issue in that case was a provision of the Civil Service Reform Act of 1978 expressly conditioning reversal of an agency disciplinary action on a showing by the employee of "harmful error in the application of the agency's procedures in arriving at such [disciplinary] decision." 5 U.S.C. § 7701(c)(2)(A). Rejecting an argument that this provision should be construed differently in arbitration proceedings than it would be in employee appeals to the M SPB,[4] the Court held that "the statutory scheme"—including its "clear ... language ... and the legislative history"—"mandates that the harmful-error rule is to apply" in the same way "whether the employee challenges the agency action through the Board or through binding arbitration." *Cornelius,* 472 U.S. at 652 & n. 3, 105 S.Ct. 2882; *see id.* at 660, 105 S.Ct. 2882 ("Congress clearly intended that an arbitrator would apply the same substantive rules as the Board does in reviewing an agency disciplinary action.").

No such statutory language or history governs this case. The Comprehensive Merit Personnel Act (CMPA), D.C.Code § 1–601.01 *et seq.* (2001), regulates public employee labor-management relations in the District of Columbia, and, as MPD concedes, the CMPA contains no provision requiring harmful (or harmless) error analysis before reversal of erroneous agency action is permitted. Neither do PERB's rules impose such a review standard on itself or on arbitrators acting un-

**3.** *See* 28 U.S.C. § 2111; D.C.Code § 11–721(e) (2001).

**4.** Indeed, no one disputed in *Cornelius* "that the [statutory] harmful-error rule applies to an arbitration as well as to a proceeding before the Board"; rather the employee-grievants "contend[ed only] that the rule should be interpreted differently in the two contexts." *Cornelius,* 472 U.S. at 652 n. 3, 105 S.Ct. 2882.

der its supervision. MPD points out that had Officer Fisher, instead of electing arbitration with the sanction of the FOP, chosen to appeal her discharge to the Office of Employee Appeals (OEA), *see* D.C.Code § 1–606.02, she would have been met with OEA's rule barring reversal of an agency action "for error ... if the agency can demonstrate that the error was harmless," 6 DCMR § 632.4, 46 D.C.Reg. 9318–19; and MPD, again citing *Cornelius,* warns of the forum-shopping and inconsistency in decisions that could result if PERB (and arbitrators) were not held to the same standard. *See Cornelius,* 472 U.S. at 662, 105 S.Ct. 2882 ("If respondents' interpretation of the harmful-error rule as applied in the arbitral context were to be sustained, an employee with a claim ... would tend to select the forum—the grievance and arbitration procedures—that treats his claim more favorably. The result would be the very inconsistency and forum shopping that Congress sought to avoid."). But, as the quotation from *Cornelius* demonstrates, Congress made its intent to avoid these evils "clear" in the Civil Service Reform Act. *Id.* at 661, 105 S.Ct. 2882 ("Adoption of respondents' interpretation ... would directly contravene this clear congressional intent."). Since MPD can point to no similar expression of legislative intent here, it cannot claim a misinterpretation of law by the arbitrator that was apparent "on its face."

MPD fares no better in citing to the principle that courts regularly hold provisions such as Article 12, Section 6 imposing time limits on agency action to be "directory, rather than mandatory" (Br. for MPD at 12), such that relief for a breach requires a showing of prejudice from the delay. *See, e.g., In re Morrell,* 684 A.2d 361, 370 (D.C.1996) (attorney discipline case holding that because "[n]othing in the text of the [disciplinary] rules ... specifies the result of a Hearing Committee's failure to adhere to the [60–day] time limit [for issuing its decision], ... we presume that the rule is directory, rather than mandatory," and attorney showed no prejudice from the delay). That distinction, involving a "presum[ption]" drawn from decisional law, cannot make the arbitrator's ruling unlawful on its face. Of special relevance in this regard is another PERB case, *Teamsters Local Union 1714 v. Public Employee Relations Bd.,* 579 A.2d 706 (D.C.1990), in which we remanded to PERB for further consideration of its summary conclusion that a similar (but statutory) 45–day written decision rule in the then-CMPA was directory rather than mandatory. We cautioned that the "presumption that a statute imposing a time limit within which a public official must act which does not specify the consequences of noncompliance is meant to be directory ... is not conclusive," but rather "the 'nature of the act to be performed' and the 'phraseology of the statute' must be examined to determine whether[, on the contrary,] 'the designation of time must be considered a limitation of the power of the officer.'" *Id.* at 710 (citation omitted). We therefore required a "[f]uller exposition" by PERB of its refusal to treat the deadline as mandatory, one that would "involve the familiar process of examining the precise statutory language, the legislative history and [—] particularly pertinent to the agency's acknowledged expertise—the purposes and policies to be served by the statute and the provision under consideration." *Id.* at 711. Plainly, if a comprehensive analysis was necessary in *Teamsters Local* before the statute could be read to be directory (and thus an inquiry into prejudice required), then the arbitrator's interpretation of Article 12, Section 6 as mandatory and conclusive was not contrary "on its face" to any law.

Moreover, the distinction on which MPD relies comes into play in a *court's* interpretation of statutes or regulations and where, as *Teamster's Local* illustrates, the court employs the normal tools of statutory construction to decide objectively what the legislature or rule-making body intended. The present case involves the decidedly different setting of a collective bargaining agreement between parties who, subject only to the limitations of D.C.Code § 1–605.02(6), have "bargained for [the arbitrator's] construction of the contract," not a court's. *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Indeed, it has been said:

> When construction of the contract implicitly or directly requires an application of "external law," *i.e.,* statutory or decisional law [such as the mandatory-directory distinction MPD cites], the parties have necessarily bargained for the arbitrator's interpretation of the law and are bound by it. Since the arbitrator is the "contract reader," his interpretation of the law becomes *part of the contract* and thereby part of the private law governing the relationship between the parties to the contract.

*Am. Postal Workers v. United States Postal Serv.*, 252 U.S.App. D.C. 169, 174, 789 F.2d 1, 6 (1986) (emphasis added).[5] Here the parties bargained for the arbitrator's interpretation of Article 12, Section 6, and absent a clear violation of law—one evident "on the face" of the arbitrator's award—neither PERB nor "a court has ... authority to substitute its judgment for [the arbitrator's]." *Id.*

MPD's final argument appears directed to the "contrary to ... public policy" limitation of § 1–605.02(6). It cites "the strong public interest in insuring the competence and honesty of public employees, especially armed police officers," and argues that "[m]ere delay" by the police panel should "not [be] enough for a person to escape the consequences of her misconduct" without a showing of prejudice to her ability to defend the charges (Br. for MPD at 15). But while no one disputes the importance of this governmental interest, the question remains whether it suffices to invoke the *"extremely narrow"* public policy exception to enforcement of arbitrator awards. *Am. Postal Workers,* 252 U.S.App. D.C. at 176, 789 F.2d at 8 (emphasis in original). Construing the similar exception in federal arbitration law, the Supreme Court has emphasized that a public policy alleged to be contravened "must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (citation and internal quotation marks omitted); *see E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17,* 531 U.S. 57, 63, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (for exception to apply, the arbitrator's interpretation of the agreement must "run contrary to an explicit, well-defined, and dominant public policy"). Even where, in *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), an employer invoked a "policy against the operation of dangerous machinery [by employees] while under the influence of drugs"—a policy judgment "firmly rooted in common sense"—the Supreme Court reiterated "that a formulation of public policy based only on 'general

---

**5.** This court looks for guidance to court decisions interpreting analogous federal labor-management relations law. *See, e.g., Gibson v. District of Columbia Pub. Employee Relations Bd.,* 785 A.2d 1238, 1243 n. 8 (D.C. 2001).

considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award ... entered in accordance with a valid collective-bargaining agreement." *Id.* at 44, 108 S.Ct. 364.

■ MPD, as we have seen, can point to no "laws and legal precedents" preventing an arbitrator from construing Article 12, Section 6 to dispense with an inquiry into prejudice from noncompliance. MPD's concern that this interpretation will leave unfit police officers on the job because of technical agency errors, besides resembling a "general consideration[] of ... public interests" inadequate to impeach an award, seems to us exaggerated for several reasons. First, the provision itself, *see* note 1, *supra,*—carefully articulated in a way that suggests the product of deliberate give-and-take collective bargaining—does not make the 55–day limit absolute; rather, the deadline can be waived in particular circumstances by employee request or "agree[ment]." Second, more importantly, a close reading of the arbitrator's decision here leaves doubtful that he would hold *any* violation of the provision to bar disciplinary action by MPD. The delay was, he stated, "extraordinary," considering that "roughly 600 days" had elapsed between the beginning and end of the evidentiary hearing—a delay marked by "six continuances," only one of which the employee had sought. It is not obvious from this language that the arbitrator would have accorded the same legal significance to a far lesser, and arguably technical, breach of the 55–day provision. Finally, and equally important, PERB has made clear in its brief to the court that it does not regard the arbitrator's interpretation here as binding on another arbitrator in another case, even construing the same paragraph. *See* Br. for PERB at 30 n. 8 ("[I]n bargaining for an arbitrator to make findings of fact and to interpret the Agree-

ment, the parties chose a forum that is not bound by precedent. Arbitration decisions do not create binding precedent even when based on the same collective bargaining agreement. *See, e.g., Hotel Ass'n of Washington, D.C., Inc. v. Hotel & Restaurant Employees Union, Local 25,* [295 U.S.App. D.C. 285, 286–88,] 963 F.2d 388, [389–]391 (D.C.Cir.1992)."). If MPD nonetheless believes the risk of repeated arbitrator decisions such as this one endangers public safety, it has other recourse—to the legislature or even to PERB in its rule-making capacity—assuming it cannot "negotiate a modification of the contract." *Am. Postal Workers,* 252 U.S.App. D.C. at 175, 789 F.2d at 7.

For all of these reasons, we find no basis on which to reverse PERB's decision sustaining the arbitrator's award, and its order consequently requiring that Officer Fisher be reinstated with back pay.

*So ordered.*

SCHWELB, Senior Judge, concurring in the judgment:

I concur in the judgment because, as the court points out, "roughly 600 days had elapsed between the beginning and end of the evidentiary hearing—a delay marked by six continuances, only one of which the employee had sought," and because the ruling might plausibly be construed as turning on this fact. If the MPD panel's written decision had been issued within 56 days, instead of about 600, and if reinstatement with back pay had nevertheless been ordered by the arbitrator, by the PERB, and by the trial court, I might well conclude otherwise. Contracts must be construed to avoid irrational results, and an interpretation of the collective bargaining agreement in this case as meaning that the slightest imperfection in the process requires the reinstatement of an officer, however culpable, with back pay, notwith-

standing the absence of any demonstrable prejudice, strikes me as so irrational that the parties should not be deemed to have intended such a result.[1]

The case is admittedly difficult for, as the majority points out, the parties bargained for a decision by the arbitrator, and that is what they got. At some point, however, a ruling even by an arbitrator becomes so unreasonable that its enforcement would be contrary to public policy. I am prepared to agree with the court that this point has not been reached on the facts before us, for the decision of the MPD panel was issued roughly a year and a half later than the collective bargaining

agreement required. To the extent, however, that the arbitrator's analysis in this case can be construed as applying even to *any* failure to comply with the 55–day limit, no matter how minor, and notwithstanding the lack of any prejudice, it has come pretty close to the line between legitimate arbitration and irrational disproportionality, and may even have crossed that line.

---

1. In my opinion, the arbitrator's ruling that the limits placed by the MPD on cross-examination constituted an independent basis for requiring reinstatement with back pay, Maj. op., *ante*, note 2, was unreasonable.