*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CV-1267

FRATERNAL ORDER OF POLICE/
METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, APPELLANT,

v.

DISTRICT OF COLUMBIA
METROPOLITAN POLICE DEPARTMENT, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAP-8659-16)

(Hon. John M. Campbell, Trial Judge)

(Argued May 26, 2021                    Decided July 14, 2022 )

*Marc L. Wilhite* for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General at the time of argument, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and MCLEESE and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: This appeal concerns the election of remedy provisions in D.C. Code § 1-616.52(e)-(f) (2016 Repl.), regarding how certain

District employees can appeal adverse employment actions, such as terminations. Those provisions permit aggrieved employees, at their discretion, to either appeal to the Office of Employee Appeals (OEA), or to invoke a negotiated grievance procedure (such as arbitration). D.C. Code § 1-616.52(e). But they must choose one or the other, and cannot proceed in both appellate forums. *Id.* An employee is generally deemed to have selected their forum based on whichever they file first: an appeal to OEA or a written grievance under the negotiated grievance procedure. D.C. Code § 1-616.52(f). This dispute concerns whether that first-filing rule is an inflexible command, and more specifically, whether an arbitrator's decision that it is not was "on its face . . . contrary to law." D.C. Code § 1-605.02(6).

Officer Justin Linville found himself in a bind when selecting his appellate forum after a Metropolitan Police Department (MPD) adverse action panel recommended his termination. Because MPD failed to timely notify Linville of that recommendation, it appeared to Linville that his right to appeal to OEA would expire before he could take the prefatory steps necessary for arbitration, and before he could know whether his union would even agree to demand arbitration on his behalf. Faced with that quandary, Linville first filed a "protective" OEA appeal to ensure that at least one appellate route remained viable in the event arbitration never became an option. He then took the preliminary steps necessary to arbitrate the dispute,

culminating with his union—the Fraternal Order of Police (FOP)—agreeing to arbitrate on his behalf. Linville then withdrew his OEA appeal and proceeded with arbitration.

The arbitrator, who the parties agreed would decide the threshold question of arbitrability, found that Linville's initial filing with OEA did not bind him to that forum. The arbitrator reasoned that the OEA appeal was merely a "protective" filing made necessary by "MPD's inadequate and haphazard service," which had deprived Linville of a meaningful choice between forums. Under those "unique facts and circumstances," the arbitrator found the OEA appeal was revocable so that FOP was free to arbitrate the dispute on Linville's behalf. The District of Columbia Public Employee Relations Board's (PERB), under its limited review of arbitral awards, affirmed that decision, finding it was not "on its face . . . contrary to law." But the Superior Court overturned the arbitrator's award, reasoning that Linville had elected OEA as his exclusive appellate forum when he first filed an appeal with it, thereby stripping the arbitrator of jurisdiction.

We disagree and reverse. Section 1-616.52(f)'s first-filing rule is not of jurisdictional import, as the Superior Court concluded. There was thus no jurisdictional impediment to the arbitrator deciding the threshold question of

arbitrability, as the parties had bargained for. *See generally First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) (parties may agree "to arbitrate arbitrability"). Moreover, the arbitrator's conclusion—that Linville was not bound to OEA as his appellate forum because MPD's delinquent service had effectively deprived him of "his ability to make a choice between appeal forums"—was not "on its face . . . contrary to law.'" *District of Columbia Metro. Police Dep't v. District of Columbia Pub. Emp. Relations Bd.*, 901 A.2d 784, 787, 789 (D.C. 2006). We therefore vacate the Superior Court's order and reinstate PERB's decision upholding the arbitral award.

## I.

In 2008, the Metropolitan Police Department discovered that Officer Justin Linville had failed to report his receipt of two criminal summonses for uttering bad checks in 2005. Following this discovery, MPD charged Linville with violating its General Orders and proposed that he be terminated. A hearing was held before an MPD adverse action panel on September 23, 2009. The panel sustained all charges brought against Linville and recommended his termination, effective December 18, 2009.

MPD attempted to serve Linville with final notice of the panel's decision on November 2, 2009, but the package was left at the doorstep of an unspecified address, leaving Linville unaware of his impending termination. As a result of the inadequate service, Linville did not learn of the panel's decision until nearly a month after his termination's effective date when, on January 12, 2010, he received a call from Human Resources inquiring about procedures relating to his termination. Three days later, on January 15, 2010, Linville sought out and obtained a copy of the panel's decision.

This appeal concerns the procedural bind Linville found himself in at that point, as a result of MPD's failure to timely serve him with the panel's decision. If Linville had been timely served, he would have had the opportunity to choose between two appellate forums: he could have appealed his termination to OEA, or he could have pursued the grievance-and-arbitration process outlined in the collective bargaining agreement between MPD and his union, FOP. *See* D.C. Code § 1-616.52(e). But because Linville did not learn of his termination until more than two months after MPD's failed service, his first option would expire before the second would ripen. When Linville finally received notice of his termination, he had just four days to file an appeal with OEA, which had to be filed by January 19, 2010. *See* D.C. Code § 1-606.03(a) (providing thirty days from adverse action to

file OEA appeal, extended where the last day falls on a weekend or holiday, as here). But Linville would not even know whether he could arbitrate the dispute until he (1) challenged the adverse action panel's decision before the Chief of Police within ten days, (2) awaited the Chief of Police's resolution of that challenge, which she had fifteen business days to issue, and (3) secured FOP's agreement to arbitrate on his behalf. There was no reasonable chance that those preconditions for arbitration would be satisfied within the four days before the OEA deadline expired, and it ultimately took more than a month for those steps to play out.[1]

Recognizing his predicament, and to ensure that at least one appellate forum was available to him, Linville filed what he called a "protective appeal" to OEA on January 19, 2010. The following day, Linville submitted to the Chief of Police his internal challenge to the adverse action panel's decision. The Chief of Police

---

[1] Normally an employee would have at least thirty days to decide which route to pursue, with both options on the table for the duration of that stretch, provided FOP would back the arbitration. MPD is required to give an officer "fifteen (15) business days advance notice in writing prior to the taking of adverse action." That aligns with the fifteen business days the Chief of Police has to resolve any grievance filed with her, after a proposed adverse action. Also, filing a grievance with the Chief of Police normally stays any adverse employment action until the Chief of Police has ruled on the grievance (that did not happen here because Linville was terminated long before he received notice of his termination). So that in the ordinary course, there would be no adverse action triggering the OEA thirty-day deadline until the Chief of Police had resolved any internal challenge.

affirmed Linville's termination on February 8, 2010. FOP then demanded arbitration on Linville's behalf on March 2, 2010. At that point, Linville had two appeals pending: one before OEA and one before an arbitrator under the collective bargaining agreement. Linville then voluntarily withdrew his OEA appeal after receiving notice of a pre-hearing conference. That notice appears to have been the first activity in that OEA appeal during its pendency.

Years after Linville withdrew his OEA appeal, in 2014, the arbitration proceedings began. In response to FOP's opening brief, MPD moved to dismiss the arbitration, claiming Linville's grievance was not arbitrable because the arbitrator lacked jurisdiction. According to MPD, the Comprehensive Merit Personnel Act, or CMPA, permitted Linville to either arbitrate his grievance under the collective bargaining agreement or appeal his grievance to OEA, but not both. *See* D.C. Code § 1-616.52(e)-(f). In MPD's view, Linville made his choice to proceed before OEA by initially filing an appeal with it, and that election was irrevocable and foreclosed the arbitration route.

The arbitrator, upon whom the parties conferred the authority to "rule on arbitrability as a threshold issue before proceeding to a hearing on the merits," disagreed. He concluded the case was arbitrable because § 1-616.52 "does not state

that an employee's choice of an appeal forum is irrevocable." The arbitrator further noted that "MPD's failure to adequately and timely serve" Linville with notice of his termination deprived Linville of his "ability to make a choice between appeal forums," so that his initial filing in OEA should not bind him to that forum. Having determined that the dispute was arbitrable, the arbitrator then ordered the parties to brief the merits of Linville's grievance. On the merits, MPD maintained that it had adequately served Linville on November 2 by leaving the notice of his impending termination at the door of his last known address. The arbitrator disagreed and concluded that MPD violated the collective bargaining agreement when it failed to personally serve Linville with final notice of his termination within the required timeframe. As a remedy, the arbitrator ordered that Linville be reinstated with back pay.

MPD appealed the arbitrability determination, but not the merits, to PERB.[2] MPD argued reversal was warranted because the arbitrator did not have jurisdiction

---

[2] It is unsurprising that MPD did not press its merits argument to the PERB, because raising a merits challenge would have put MPD in the awkward position of arguing (1) that the November 2 service was valid for purposes of upholding Linville's termination under the collective bargaining agreement, but (2) that Linville had no need to file a "protective" appeal with OEA because it was "unarguable" that the November 2 service was ineffective so that it would not start the clock ticking on his appeal deadlines. While parties frequently argue in the

to hear Linville's grievance, and the arbitrator's determination was otherwise contrary to law. PERB affirmed the arbitrability award. It determined that MPD merely disagreed with the arbitrator's application of the CMPA, and that MPD could point to no "law and legal precedents" that would prevent the arbitrator "from interpreting D.C. Official Code § 1-616.52(d), (e), and (f) to allow [Linville] to withdraw his appeal at OEA," particularly given the "unique facts and circumstances" of the case that counseled in favor of such relief.

MPD then appealed to the Superior Court. The court overturned PERB's decision, agreeing with MPD that the arbitrator did not have jurisdiction to hear the matter. It reasoned that D.C. Code § 1-616.52 was "clear" and "provide[d] no exceptions": because Linville filed an appeal first with OEA, that was the only forum that had jurisdiction to hear Linville's grievance. Although the trial court did not believe § 1-616.52 allowed for equitable exceptions, it further found that the equities did not warrant relieving Linville of his choice to initially file with OEA. Because Linville was never served with notice of the adverse action panel's decision, the trial court opined that it was "unarguable" that the relevant filing deadlines "should be

---

alternative, rarely does one of its arguments rest on a premise that the other is unquestionably wrong.

considered never to have started to run," and thus did not prevent Linville from making a "meaningful choice" between the two appeal forums.

FOP, on behalf of Linville, now appeals to this court, claiming the trial court erred in overturning PERB's decision.

## II.

Although this appeal is taken from a decision of the Superior Court, "we review the PERB decision as if the matter had been heard initially in this court." *Am. Fed'n of State, Cty., & Mun. Emps., Local 2087 (AFSCME) v. Univ. of the District of Columbia*, 166 A.3d 967, 972 (D.C. 2017) (quoting *Gibson v. District of Columbia Pub. Emp. Relations Bd.*, 785 A.2d 1238, 1241 (D.C. 2001)). That is, we review PERB's decision, not the Superior Court's.

"PERB's review of an appeal of an arbitration award is . . . limited." *AFSCME*, 166 A.3d at 972; *see also Fraternal Order of Police/Dep't of Corr. Labor Comm. (FOP) v. District of Columbia Pub. Emp. Relations Bd.*, 973 A.2d 174, 177 & n.3 (D.C. 2009). PERB may only "modify, set aside, or remand an arbitrator's decision 'if the arbitrator [1] was without, or exceeded his or her jurisdiction; [2] the award on its face is contrary to law and public policy; or [3] [the award] was

procured by fraud, collusion, or other similar and unlawful means.'" *AFSCME*, 166 A.3d at 972 (quoting D.C. Code § 1-605.02(6)) (brackets in original). As for our own review of PERB decisions, there is a second layer of deference. "[W]e are obligated to defer to the PERB's interpretation of the CMPA language"—including what it means for an award to be "on its face . . . contrary to law," D.C. Code § 1-605.02(6)—"unless the interpretation is plainly erroneous." *FOP*, 973 A.2d at 178.

MPD claims the first two exceptions above (that the arbitrator lacked jurisdiction and issued an award that was contrary to law on its face) compelled PERB to set aside the arbitrator's award. We disagree.

**A.**

We begin with the question of whether the arbitrator exceeded his authority under § 1-616.52(e)-(f) by hearing Linville's grievance despite Linville's prior appeal to OEA.[3] According to MPD, the arbitrator did not have the power to hear

---

[3] Whether an arbitrator improperly exceeded their authority under D.C. Code § 1-605.02(6) normally turns not on a traditional jurisdictional analysis, but on whether the arbitral award "draws its essence from the collective bargaining agreement." *AFSCME*, 166 A.3d at 973 (quoting *Sindler v. Batleman*, 416 A.2d 238, 242 (D.C. 1980)). This is not a heavy burden to meet. "It is only when the

Linville's grievance because § 1-616.52(e)-(f) creates a jurisdictional bar, such that by filing his appeal to OEA, Linville divested the arbitrator of jurisdiction. Not so.

The Supreme Court in recent years has "pressed a stricter distinction between truly jurisdictional rules, which govern a court's adjudicatory authority," *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted), and non-jurisdictional "claim-processing rules," which "seek to promote the orderly process of litigation," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)*; see also Neill v. District of Columbia Pub. Emp. Relations Bd.*, 93 A.3d 229, 237-38 (D.C. 2014). The reason for this stems from the "'drastic' consequences" that accompany a jurisdictional label, and a belief that the legislature does not impose them lightly. *Gonzalez,* 565 U.S. at 141 (quoting *Henderson*, 565 U.S. at 435). For example, unlike claim-processing rules, jurisdictional constraints cannot be relaxed

---

arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice' that his decision" may be categorized as exceeding his authority. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). MPD does not claim that the arbitrator's award did not draw its essence from the collective bargaining agreement. Nor could it. Not only did the collective bargaining agreement give the arbitrator the power to decide whether a submitted grievance was arbitrable, but nowhere did it purport to restrict an arbitrator's power to grant equitable relief. *See AFSCME*, 166 A.3d at 973 ("[A]n arbitrator does not exceed his or her authority by exercising his or her equitable power, unless it is expressly restricted by the parties' collective bargaining agreement.") (citation and emphasis omitted).

for equitable reasons. *See, e.g.*, *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015); *Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1102 (D.C. 2015). Nor can they be waived or forfeited, which means that "a valid [jurisdictional] objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Gonzalez*, 565 U.S. at 141.

Given these harsh features, we have stressed that both rule-based and statutory restrictions on authority are generally non-jurisdictional unless the legislature clearly "meant for noncompliance . . . to have jurisdictional consequences." *Mathis*, 124 A.3d at 1102. To determine whether the legislature clearly intended for a statute to carry jurisdictional consequences, we look first to the text of the statute to see whether it deploys jurisdictional language or imposes jurisdictional consequences if a party fails to comply with the relevant command. *See id.* (we use "traditional tools of statutory construction" to determine whether a statute "plainly show[s]" the legislature intended for it to be jurisdictional (quoting *Kwai Fun Wong*, 575 U.S. at 410)). Examples of jurisdictional language include: "an appeal may not be taken," "no person shall file or prosecute," "no action shall be brought under," and "an action . . . shall not be filed or maintained in a Federal court and shall be promptly dismissed." *Patchak v. Zinke*, 138 S. Ct. 897, 905-06 (2018) (plurality opinion) (collecting cases).

There is no such jurisdictional language in § 1-616.52(e)-(f), which reads:

> (e) Matters covered under this subchapter that also fall within the coverage of a negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either pursuant to § 1-606.03, or the negotiated grievance procedure, but not both.

> (f) An employee shall be deemed to have exercised their option pursuant to subsection (e) of this section to raise a matter either under the applicable statutory procedures or under the negotiated grievance procedure at such time as the employee timely files an appeal under this section or timely files a grievance in writing in accordance with the provision of the negotiated grievance procedure applicable to the parties, whichever event occurs first.

While the statute says an aggrieved employee may not pursue both avenues of appeal, and uses mandatory language such as "shall" to denote when an employee makes their choice of forum, it does not prohibit an employee from *filing* an appeal under their collective bargaining agreement despite first appealing to OEA—or vice versa. The statute does not state that if an employee files in one forum, the second forum must dismiss the appeal, nor does it contain any other tell-tale signs of jurisdictional import. The statute simply does not speak in jurisdictional terms. *See United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 120 (D.C. Cir. 2015) (statute providing that "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action" did not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts").

Nor does the legislative history suggest that the D.C. Council meant for § 1-616.52(e)-(f) to carry jurisdictional consequences. Section 1-616.52 was added to the CMPA as part of the Omnibus Personnel Reform Amendment Act of 1998, D.C. Act 12-326, 45 D.C. Reg. 2464 (Apr. 24, 1998). The only mention in the Act's legislative history as to an intent by the D.C. Council to include a jurisdictional limitation relates not to § 1-616.52(e)-(f), but to § 1-616.52(b)—a provision that restricts the types of grievances that may be appealed to OEA based on the severity of the disciplinary action. *See* Omnibus Personnel Reform Amend. Act of 1998, D.C. Council, Report on Bill 12-44 at 14 (Jan. 6, 1997) (stating one of the Act's objectives was to "limit[] OEA's jurisdiction" by "restrict[ing] the type of cases employees can appeal to OEA to suspensions of ten days or more, reductions in grade, and removals"). Had the D.C. Council meant to imbue § 1-616.52(e)-(f) with the same jurisdictional aura as § 1-616.52(b), we would expect to find some evidence of that in the statutory text or (at the very least) in the legislative history. We see none. That bolsters our conclusion that § 1-616.52(e)-(f) is not of jurisdictional import.

Given the statutory text and the lack of legislative history, we conclude that the election contemplated by § 1-616.52(e)-(f) is not of jurisdictional consequence. In concluding otherwise, the trial court erred. The parties bargained for the arbitrator

to decide the question of arbitrability, and in deciding that question, he did not exceed his jurisdiction.

**B.**

We turn now to whether the arbitral award was "on its face . . . contrary to law." D.C. Code § 1-605.02(6). Stripped of its jurisdictional argument, MPD makes two arguments under this second umbrella. First, it contends that even if § 1-616.52(e)-(f) is a non-jurisdictional claim-processing rule, it is a mandatory one that must be enforced without exception when a party timely invokes it, as MPD contends it did. Second, MPD attacks the factual findings that informed the arbitrator's decision to grant equitable relief, claiming that Linville was not deprived of the ability to meaningfully choose between the two appeal forums available to him. We address these arguments in turn.

**1.**

MPD first asserts that even if § 1-616.52(e)-(f) is a non-jurisdictional claim-processing rule, it is a mandatory one that must be enforced so long as it is invoked, without exception. That is far from clear. For a claim-processing rule to be considered mandatory, it must "show a clear intent to preclude [equitable relief]."

*Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019). In other words, the text of the rule must not "leave[] room for such flexibility." *Id.* Moreover, "the simple fact that a [rule] is phrased in an unqualified manner does not necessarily establish that [equitable relief] is unavailable." *Id.* at 715. MPD claims the text of § 1-616.5(e)-(f) is inflexible, but points to no language that renders that conclusion obvious.[4] Section 1-616.52(e)-(f) is silent as to whether it is susceptible to equitable exceptions, and the legislative history provides no indication that such exceptions are impermissible. Because it is not clear from the text of the statute or the legislative history, it is not evident whether or not § 1-616.52(e)-(f) permits equitable exceptions. *Cf. United States v. Brockamp*, 519 U.S. 347, 349-54 (1997) (statute's "technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate[d] . . . that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute").

---

[4] In addition to the statute itself, MPD cites to *Brown v. Watts*, in which we said that § 1-616.52(e)-(f) requires that an "employee must choose between the two dispute resolution methods at the outset of the appeal." 993 A.2d 529, 533-34 (D.C. 2010). That is true enough as a general proposition, but *Brown* did not purport to foreclose exceptions to that general rule. And as the arbitrator pointed out, that statement was entirely collateral to the outcome of *Brown* and was therefore dicta.

MPD thus "cannot claim a misinterpretation of law by the arbitrator that was apparent 'on its face.'" *District of Columbia Metro. Police Dep't*, 901 A.2d at 788-89. Section 1-616.52(e)-(f) provides that "an employee shall be deemed to have exercised their option" as between appellate forums—an option that is left to "the discretion of the aggrieved employee"—based on where they first file an appeal. But the language suggests that an employee's choice is binding only when the employee has an "option" that can be "exercised" in their "discretion." As the arbitrator reasoned, that was not true under "the unique facts and circumstances of this case." The delayed service meant that when Linville filed his OEA appeal on the last possible day, he did not yet have an option to pursue arbitration, and it was unclear if that option would ever materialize. He therefore might quite reasonably be relieved of the consequences of a statute that presumes a choice he did not in fact have.

We can think of no legislative purpose that would be served by the contrary interpretation. *See Williams v. Kennedy*, 211 A.3d 1108, 1110 (D.C. 2019) ("We also consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation."). This is not a case where an employee tried to get a second bite at the apple by pursuing multiple routes of appeal. The bind Linville found himself in arose through no fault of his own, and

through no lack of diligence on his or FOP's part. No significant administrative resources were squandered because no substantive action was taken with regard to the OEA appeal. And any minimal prejudice MPD has suffered was largely of its own making. As the arbitrator observed, MPD's preferred result was "not consistent with the intent of the CMPA . . . which seeks to protect and preserve an employee's right to appeal adverse actions."

In short, we agree with PERB that the arbitrator's interpretation of the statute was not "on its face . . . contrary to law."

**2.**

Next, MPD contends that even if the statute permitted some equitable exceptions to the first-election rule, there was no basis for relaxing that rule in Linville's case. Like the trial court, MPD reasons that if Linville did not receive notice of the adverse action panel's decision until months later—a point MPD does not now dispute—then he had no reason to think the OEA filing deadline was about to expire. While the relevant statutory deadline gave Linville thirty days from "the effective date of the appealed agency action" to appeal to OEA, D.C. Code § 1-606.03, and the relevant action was his termination nearly a month earlier, Linville had no cause to worry, in MPD's view. Like the Superior Court, MPD

argues it "seems unarguable that Linville's appeal deadlines, whether to the Chief of Police . . . or to the OEA would not begin to run until he was properly served with or received the final notice of termination," so he was never in any bind. We disagree.

Linville's failure to take a leap of faith is not a strike against him. He could not know, when filing his OEA appeal, that he would ultimately be vindicated as to his contention that he was not served in a timely manner. No prudent litigant would assume they will be vindicated on each point they happen to be right about. And MPD's argument is a curious one given that it maintained that its November 2 service was adequate when the issue was presented to the arbitrator. *See supra* n.2. It is hardly in a position to fault Linville for lacking confidence in a proposition that MPD itself had actively disputed. Without a concession from MPD admitting that the November 2 service was inadequate—which MPD was clearly not willing to provide given the arguments it made before the arbitrator—Linville reasonably proceeded as if it might eventually be determined that he had been served on November 2. Anything less and he would have risked depriving himself entirely of the ability to appeal his termination.

Given this reality, it was not unreasonable for PERB to accept the arbitrator's factual justifications for allowing Linville to withdraw his OEA appeal and proceed with arbitration.  MPD gives us no reason to disturb that decision.  *See FOP*, 973 A.2d at 176 ("[W]e must defer to [PERB's] factual findings if they are supported by 'substantial evidence.'").

## III.

We vacate the Superior Court's order and reinstate PERB's affirmance of the arbitrator's award.

*So ordered.*