*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-1115

DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT, APPELLANT,

v.

DISTRICT OF COLUMBIA PUBLIC EMPLOYEE RELATIONS BOARD, APPELLEE,

and

FRATERNAL ORDER OF POLICE/METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, INTERVENOR.

Appeal from the Superior Court
of the District of Columbia
(CAP-4340-18)

(Hon. John M. Campbell, Trial Judge)

(Argued February 8, 2022                    Decided September 15, 2022)

*Stacy L. Anderson*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time the brief was filed, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellant.

*Geoffrey H. Simpson*, with whom *Bruce A. Fredrickson* was on the brief, for appellee.

*Daniel J. McCartin*, with whom *Anthony M. Conti* was on the brief, for intervenor.

Before EASTERLY and MCLEESE, *Associate Judges*, and THOMPSON,[*] *Senior Judge*.

MCLEESE, *Associate Judge*:  Appellant, the Metropolitan Police Department (MPD), terminated Officer Michael Thomas based on an incident in which Officer Thomas, while off duty and in Maryland, shot an unarmed civilian.  An arbitrator reinstated Officer Thomas, ruling that Officer Thomas instead should be suspended for forty-five days.  Appellee, the Public Employee Relations Board (PERB), upheld the arbitrator's decision, as did the Superior Court.  We vacate and remand the case to the Superior Court to in turn remand the case to PERB for further proceedings.

## I.  Factual Background

In sum, the evidence about the shooting was as follows.  Officer Thomas was with his girlfriend, Hope Mathis, at a home in Maryland early one morning.  Officer Mathis was also an MPD officer, and both officers were off duty.  Officer Thomas heard and saw someone near his car.  Officer Thomas and Officer Mathis went onto the front porch, without calling 911.  The officers were outside of their jurisdiction,

---

[*] Senior Judge Thompson was an Associate Judge of the court at the time of argument.  She began her service as a Senior Judge on February 18, 2022.

and they had received training indicating that they should have called 911 before taking any police action in response to a nonviolent property crime.

After stepping onto the porch, Officer Thomas yelled "police truck," in an attempt to get the person by the car, Julio Lemus, to run away. Mr. Lemus did not run away. Officer Thomas then demanded that Mr. Lemus show his hands.

According to Officer Thomas, Mr. Lemus moved toward Officer Thomas and moved his hands towards the front pocket of his hoodie. Officer Thomas then shot Mr. Lemus twice.

Mr. Lemus's testimony differed from Officer Thomas's in certain respects. Mr. Lemus testified that he had his hands up and that Officer Thomas never identified himself as a police officer. Mr. Lemus had consumed a substantial amount of alcohol before the incident. When Officer Thomas approached, Mr. Lemus was trying to urinate near the car. Mr. Lemus was unarmed. As a result of the shooting, Mr. Lemus was hospitalized for over two months and underwent six surgeries.

## II. Procedural Background

Officer Thomas was not prosecuted for the shooting. MPD sought to terminate Officer Thomas, charging him with (1) committing a crime by creating a substantial risk of death or serious injury, and (2) violating MPD's use-of-force policy. After an evidentiary hearing, an MPD adverse-action panel found by a preponderance of the evidence that Officer Thomas was guilty of both charges. The panel also concluded that the charges warranted termination. In determining the appropriate sanction, the panel applied a set of factors taken from *Douglas*, 5 M.S.P.B. 313, 331-32 (1981) (providing non-exhaustive list of twelve factors in determining appropriate penalty for employee misconduct).

Officer Thomas appealed to the chief of police, who accepted the recommendation of termination.

Intervenor, the Fraternal Order of Police (FOP), which is the union that represents Officer Thomas, took the matter to arbitration. The arbitrator found sufficient evidence of Officer Thomas's guilt on both charges but concluded that termination was not an appropriate remedy. After listing the *Douglas* factors, the arbitrator noted that several of those factors are routinely considered by arbitrators

when determining whether proposed discipline is appropriate. The arbitrator also cited a treatise discussing factors considered by arbitrators when making such determinations.

The arbitrator took issue with the adverse-action panel's treatment of three of the twelve *Douglas* factors. First, the arbitrator focused on whether the sanction proposed in this case was consistent with sanctions imposed on other employees for the same or similar offenses. The adverse-action panel had not cited comparable cases, and the arbitrator concluded that several cases the parties had cited were not comparable. The arbitrator also discussed a case in which an off-duty police officer, Officer Ford, had received a forty-five day suspension for shooting and killing a person who had attacked the officer. Second, the arbitrator questioned whether only termination would suffice to deter future misconduct. Finally, the arbitrator expressed the view that a sanction short of termination might have sufficed to rehabilitate Officer Thomas.

In the arbitrator's view, the adverse-decision panel's analysis of those three *Douglas* factors was not "within tolerable limits of reasonableness." *Douglas*, 5 M.S.P.B. at 329. The arbitrator then imposed the same forty-five day suspension

imposed in Officer Ford's case, which the arbitrator described as involving "as close to similar misconduct as is in evidence."

MPD challenged the arbitrator's decision before PERB, arguing that the decision was "on its face . . . contrary to law and public policy." D.C. Code § 1-605.02(6) (authorizing PERB to set arbitral awards aside on that ground). MPD argued that the arbitrator's decision was on its face contrary to law in several respects. First, MPD argued that the arbitrator erroneously placed the burden on MPD to show that other employees had been terminated for similar conduct. Rather, MPD would have had such a burden only if Officer Thomas had made an "initial showing that . . . [MPD] treated similarly[ ]situated employees differently." *D.C. Metro. Police Dep't v. D.C. Off. of Emp. Appeals*, 88 A.3d 724, 730 n.3 (D.C. 2014) (internal quotation marks omitted). Second, MPD argued that, under *Douglas*, an agency's selected sanction may be set aside only if the agency failed to weigh the relevant factors or the proposed sanction fell outside the limits of reasonableness. According to MPD, the arbitrator did not reach either conclusion and could not properly have done so. Third, MPD argued that the arbitrator erred by imposing a forty-five day sanction based on the Ford case, because that case involved self-defense and thus was not comparable to the present case.

MPD also argued that the arbitrator's decision was contrary to public policy. Specifically, MPD argued that (1) there is a clear public policy against police officers committing crimes involving the use of deadly force, and (2) reinstating Officer Thomas would be contrary to that public policy.

PERB upheld the arbitrator's decision. PERB explained that its authority to overturn arbitral awards is limited. Citing a number of its previous decisions, PERB concluded that the arbitrator could permissibly reach his own decision about the appropriate sanction, rather than being required to defer to the sanction picked by MPD as long as that sanction was reasonable. PERB did not specifically address MPD's other arguments as to why the arbitrator's award was contrary to law. Instead, PERB stated generally that "mere disagreement with the Arbitrator's interpretation does not make an award contrary to law and public policy."

PERB also concluded that the arbitrator's award was not contrary to public policy. After emphasizing that the authority to set aside arbitral awards on that basis is narrow, PERB stated without explanation that MPD had not identified a clear violation of public policy.

MPD appealed to the Superior Court, which affirmed PERB's decision.

### III. Standards of Review

We owe no deference to the trial court's ruling, instead reviewing PERB's decision "as if the matter had been heard initially in this court." *Gibson v. D.C. Pub. Emp. Rels. Bd.*, 785 A.2d 1238, 1241 (D.C. 2001).

This court's cases have been unclear on the nature of the deference this court owes to PERB's decisions. The earliest cases reviewed PERB's decisions under generally applicable standards of administrative review. *See, e.g.*, *Teamsters Loc. Union 1714 v. Pub. Emp. Rels. Bd.*, 579 A.2d 706, 709 n.3 (D.C. 1990) ("[O]ur cases involving review of PERB decisions have proceeded on the ground that . . . PERB's legal conclusions are subject to the ordinary amount of deference given to agencies entrusted with implementation of statutes."). We subsequently stated, however, that unless PERB's "decision is rationally indefensible, we are obliged to sustain it." *Drivers Loc. Union No. 639 v. District of Columbia*, 631 A.2d 1205, 1216 (D.C. 1993). We have used the latter formulation in several other cases addressing the deference we owe to PERB decisions. *E.g.*, *Am. Fed'n of State, Cnty., & Mun. Emps. Loc. 2087 v. Univ. of D.C.*, 166 A.3d 967, 972 (D.C. 2017).

It is not entirely clear whether the court intended the words "rationally indefensible" to indicate that the decisions of PERB are entitled to unusually strong deference. In any event, we are bound to follow our earlier decisions to the extent there is any inconsistency between them and our later decisions. *See, e.g.*, *Thomas v. United States*, 731 A.2d 415, 420 n.6 (D.C. 1999) ("Where a division of this court fails to adhere to earlier controlling authority, we are required to follow the earlier decision rather than the later one."). We therefore clarify that our review of PERB's decisions is not unusually deferential but rather is governed by the same principles of review that apply to other expert agencies. "Recognizing agency expertise, we accord great weight to any reasonable construction of an ambiguous statute by the agency charged with its administration." *Johnson v. D.C. Dep't of Emp. Servs.*, 111 A.3d 9, 11 (D.C. 2015) (brackets, ellipses, and internal quotation marks omitted). "We will sustain the agency's interpretation even if a [party] advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance." *Id.* (internal quotation marks omitted).

PERB "has only limited authority to overturn an arbitral award." *D.C. Pub. Emp. Rels. Bd. v. Fraternal Ord. of Police/Metro. Police Dep't Lab. Comm.*, 987 A.2d 1205, 1208 (D.C. 2010) (internal quotation marks omitted). In the present case,

MPD asked PERB to set aside the arbitrator's award on the ground that the award "on its face is contrary to law and public policy." D.C. Code § 1-605.02(6). We have acknowledged the ambiguity of the phrase "on its face is contrary to law and public policy." *Fraternal Ord. of Police/Dep't of Corr. Lab. Comm. v. D.C. Pub. Emp. Rels. Bd.*, 973 A.2d 174, 177-78 (D.C. 2009). Under ordinary principles of administrative law, we therefore would defer to PERB's reasonable interpretation of what it means for an arbitral award to be on its face contrary to law and public policy. *Id.* at 178. An agency decision, however, must "state the basis of its ruling in sufficient detail and be fully and clearly explained, so as to allow for meaningful judicial review of and deference to the agency's decision." *DC Appleseed Ctr. for L. & Just., Inc. v. D.C. Dep't of Ins., Sec., & Banking*, 214 A.3d 978, 985 (D.C. 2019) (internal quotation marks omitted).

## IV. Analysis

We flag at the outset one lurking issue. Section 1-605.02(6) authorizes PERB to set aside an arbitral award if the award "on its face is contrary to law *and* public policy." (Emphasis added.) The word "and" is ordinarily understood as a term of conjunction. *See, e.g.*, *Whitfield v. United States*, 99 A.3d 650, 657 (D.C. 2014) ("[U]se of the word 'and' is—absent evidence to the contrary—treated as a

conjunctive . . . ."). Section 1-605.02(6) thus arguably provides that an arbitral award can be set aside only if the award is contrary to both law and public policy. In some settings, however, "and" can be interpreted to mean "or." *See, e.g.*, *Fields v. District of Columbia*, 232 A.2d 300, 304 (D.C. 1967) ("It is a well-recognized principle of statutory construction that the conjunctive and disjunctive are signified interchangeably if to do so is consistent with the legislative intent.") (internal quotation marks omitted); 1A Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 21.14 (7th ed. Nov. 2021 update) (citing authority for proposition that "laxity in the use of the conjunctive 'and' and the disjunctive 'or' is so frequent that the doctrine has been accepted that they are interchangeable and the one may be substituted for the other if to do so is necessary to give effect to any part of a statute or to effectuate the intention of the Legislature").

The court discussed this issue in *Fraternal Ord. of Police*, 973 A.2d at 179. Without deciding the issue, we suggested that the terms "contrary to law" and contrary to "public policy" overlap, because "an award that is contrary to a specific law *ipso facto* may be said to be contrary to the public policy that the law embodies." *Fraternal Ord. of Police*, 973 A.2d at 179. We also decline to resolve this issue in the present case. MPD's brief in this court takes the position that the arbitral award should properly be set side if the award on its face is contrary to either law or public

policy. Neither FOP nor PERB explicitly disputes that position. We therefore take the point as conceded and decide the case accordingly.

## A.  On Its Face Contrary to Law

Our prior cases establish three principles that provide guidance as to the meaning of the words "on its face contrary to law." First, an arbitral award will not be set aside as "on its face contrary to law" simply because PERB or this court might reach a different conclusion as to a legal issue decided by the arbitrator. *E.g.*, *D.C. Metro. Police Dep't v. D.C. Pub. Emp. Rels. Bd.*, 901 A.2d 784, 789 (D.C. 2006). That is because, by agreeing to arbitrate, "the parties bargained for the arbitrator's interpretation" of the law, not that of PERB or the court. *Id.*  Second, an arbitral award can be set aside if a "clear violation of law" is "evident on the face of the arbitrator's award." *Id.* (internal quotation marks omitted); *see Fraternal Ord. of Police*, 973 A.2d at 178 ("[T]he statutory reference to an award that on its face is contrary to law and public policy may include an award that was premised on a misinterpretation of law by the arbitrator that was apparent on its face.") (internal quotation marks omitted). Third, an award will be viewed as on its face contrary to law if, "in arriving at the award, the arbitrator looks to an external law for guidance

and purports to apply that law, but overlooks or ignores the law's express provisions." *Fraternal Ord. of Police*, 973 A.2d at 178.

As we have previously noted, MPD argued to PERB that the arbitrator's decision was on its face contrary to law for three reasons: (1) the arbitrator erroneously placed the burden on MPD to show that other employees had been terminated for similar conduct; (2) under *Douglas*, the arbitrator erred by setting aside MPD's selected sanction without finding either that MPD failed to weigh the relevant factors or that the proposed sanction fell outside the limits of reasonableness; and (3) the arbitrator erred by imposing a forty-five day sanction based on a case that was not comparable to the present case.

PERB addressed one aspect of MPD's argument in some detail, concluding that the arbitrator could permissibly reach his own decision about the appropriate sanction, rather than being required to defer to the sanction picked by MPD as long as that sanction was reasonable. MPD argues, however, that the collective bargaining agreement contains provisions that should be interpreted to require the arbitrator to defer to MPD's selected remedy as long as that remedy is reasonable. MPD has provided this court with the collective bargaining agreement, but apparently did not provide the collective bargaining agreement to PERB. MPD also

did not argue to PERB that the terms of the collective bargaining agreement required the arbitrator to defer to MPD's selected sanction. We decline to consider information and argument that were not presented to PERB. *See, e.g., Fraternal Ord. of Police*, 973 A.2d at 179 (declining to consider argument made for first time before this court; citing D.C. Code § 1-617.13(b) ("No . . . objection to an order of [PERB] shall be considered . . . , unless such . . . objection was first urged before [PERB].")); *Friends of McMillan Park v. D.C. Zoning Comm'n*, 211 A.3d 139, 148 (D.C. 2019) ("Our review, however, is limited to the evidence in the administrative record before the agency."). Given the limited arguments and information presented to PERB, we agree that PERB's ruling on this point was reasonable. *See generally* Elkouri & Elkouri, *How Arbitration Works* 15-28 to -30 (7th ed. 2012) ("Court decisions recognize broad arbitral discretion to review the reasonableness of the penalty imposed by the employer in relation to the employee's wrongful conduct. . . . Of course, . . . the parties may limit the discretion of the arbitrator to modify the discipline imposed by the employer by [using] express language to that effect in the collective bargaining agreement."); *id.* at 15-33 to -39 (noting different approaches taken as to authority of arbitrator to modify sanctions).

We note, however, that it is not at all clear to us whether the arbitrator understood himself to be exercising general authority to modify the sanction selected

by MPD or instead understood himself to be conducting the more limited review authorized under *Douglas*.  If this matter is returned to the arbitrator, that issue would warrant clarification.

We conclude that a remand to PERB is necessary with respect to MPD's other arguments that the arbitrator's award was on its face contrary to law.  PERB did not specifically address those arguments, instead simply stating without further explanation that "mere disagreement with the Arbitrator's interpretation does not make an award contrary to law and public policy."  On remand, PERB should address MPD's specific arguments in light of the general principles noted above.

Finally, we address an argument raised by FOP and PERB at oral argument: that an arbitrator's determination as to the appropriate sanction for employee misconduct could never be on its face contrary to law.  FOP and PERB took the position, for example, that PERB and the courts would be powerless to overturn an arbitral award reinstating a police officer who had committed cold-blooded mass murder of other officers and civilians.  We disagree.  In sufficiently extreme circumstances, an arbitrator's selection of penalty could be so arbitrary and capricious as to be on its face contrary to law.  *Cf. Love v. D.C. Off. of Emp. Appeals*, 90 A.3d 412, 425 (D.C. 2014) (agency's decision to terminate employees for

misconduct was "arbitrary, capricious, and not in accordance with the law"); *Douglas*, 5 M.S.P.B. at 334 n.72 ("[I]t is possible for a penalty to be so disproportionate to the offense as to be illegal . . . .") (internal quotation marks omitted).

## B. On Its Face Contrary to Public Policy

The public-policy exception to the enforcement of arbitral awards is "*extremely narrow*." *D.C. Metro. Police Dep't*, 901 A.2d at 789 (internal quotation marks omitted). The "public policy alleged to be contravened must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* (internal quotation marks omitted). The Supreme Court of the United States has explained that the issue is not whether the employee's misconduct violated public policy but rather whether enforcing the arbitral award would do so. *E. Associated Coal Corp. v. UMW, Dist. 17*, 531 U.S. 57, 62-63 (2000). The Supreme Court also has stated, however, that "courts' authority to invoke the public policy exception is not limited solely to instances where the arbitration award itself violates positive law." *Id.* at 63. It does not appear that either PERB or this court has expressly addressed the latter issue.

MPD argues in the present case that there is a well-defined and dominant public policy against the criminal use of deadly force by the police. PERB and FOP understandably do not dispute that point. Rather, the dispute is over whether reinstating Officer Thomas would violate that public policy. Courts around the country have divided when confronting similar issues. *Compare, e.g.*, *City of Seattle, Seattle Police Dep't v. Seattle Police Officers' Guild*, 484 P.3d 485, 489-507 (Wash. Ct. App. 2021) (upholding trial-court order setting aside arbitral award as against public policy, where arbitrator reinstated officer who used excessive force by punching handcuffed suspect in face, breaking suspect's orbital bone), *and City of Des Plaines v. Metro. Alliance of Police, Chapter No. 240*, 30 N.E.3d 598, 600-610 (Ill. App. Ct. 2015) (upholding in part trial-court order setting aside arbitral award as against public policy, where arbitrator reinstated officer who used excessive force against arrestees; case remanded for arbitrator to further consider appropriate sanction), *with, e.g.*, *Town of South Windsor v. S. Windsor Police Union Loc. 1480*, 770 A.2d 14, 16-30 (Conn. 2001) (reversing order setting aside arbitral award as contrary to public policy, where arbitrator reinstated officer who pointed gun at young men playing basketball without permission at gymnasium); *see generally* Tracy Bateman Farrell, *Vacating on Public Policy Grounds Arbitration Awards Reinstating Discharged Employees—State Cases*, 112 A.L.R.5th 263, § 18 (2003 & Cum. Supp.) (citing cases).

We do not view PERB as having adequately explained its decision not to set aside the arbitral award as against public policy. After emphasizing that the authority to set aside arbitral awards on that basis is narrow, PERB simply stated without explanation that MPD had not offered a clear violation of public policy. A remand to PERB is therefore necessary on this issue as well.

For the foregoing reasons, the judgment of the Superior Court is vacated and the case is remanded for the Superior Court to remand the case to PERB for further proceedings.

*So ordered.*